95 P.3d 1277 (2004)
STATE of Washington, Respondent/Cross-Appellant,
v.
Zachary A. KINNEMAN, Appellant/Cross-Respondent.
No. 51400-8-I.
Court of Appeals of Washington, Division 1.
August 16, 2004.
*1279 Gregory Charles Link, Nancy P. Collins, Washington Appellate Project, Seattle, WA, for Appellant.
John Christopher Carver, King County Prosecuting Attorney, Ofc/Fraud Division, Seattle, WA, for Respondent.
APPELWICK, J.
Zachary Kinneman, an attorney, made multiple unauthorized withdrawals from his Interest on Lawyer Trust Account (IOLTA) over 16 months. He was convicted of 28 counts of first degree theft and 39 counts of second degree theft. After a restitution hearing, the trial court ordered that he pay one victim $246,770.10, and a second victim, $308,616.73 in restitution. Kinneman appeals the trial court's order, alleging that the record contained insufficient evidence to support portions of the award, and that some of the individuals to whom the court awarded restitution were not "victims" under former RCW 9.94A.142. The State cross-appeals the court's restitution award to one of the alleged victims, its denial of restitution to another victim, and the court's denial of attorney fees and costs as part of restitution. We affirm in part, reverse in part and remand.

*1280 FACTS

I. Underlying Theft
In June 1997, Zachary Kinneman, an attorney licensed to practice in the state of Washington, was hired to act as an escrow and closing agent for five separate real estate refinancings. The borrower for all five transactions was Rodney R. Brown (Brown), and the lender was Option One Mortgage Company (Option One) of California. The five properties were all located in Seattle, Washington.
Prior to the refinancing transactions, Brown, who was serving time in prison, had executed an attorney-in-fact agreement with his brother William Michael Brown (W.M.Brown). Working with a mortgage broker named James Cunningham (Cunningham), W.M. Brown applied for the five loans from Option One in his brother's name. W.M. Brown did not notify Option One of his identity and his position as attorney-in-fact; instead, he simply wrote and signed his brother's name on the loan documents. Option One approved the loans. Cunningham suggested that Kinneman be used as the escrow agent.
In four separate wire transfers on June 17, 1997, and one wire transfer on June 27, 1997, Option One transferred a total of $499,506.96 to Kinneman's IOLTA account at Washington Mutual Bank. In its closing instructions, Option One directed Kinneman to obtain a title insurance policy for each of the five properties, have the borrower sign all the necessary paperwork, record the deeds of trust, and pay off all prior lienholders on the properties and other intended disbursees, such as the loan broker. Shortly after the funds were deposited in his IOLTA account, Kinneman falsely notified Option One that he had complied with all of its escrow and closing instructions. At the time Kinneman made those representations to Option One, he had not in fact paid off any of the prior lienholders, and had failed to purchase title insurance on one property, the Columbia Street property, as dictated in the escrow and closing instructions. Kinneman also paid approximately $92,000 to W.M. Brown.[1]
Between June 17, 1997, and October 22, 1998, Kinneman made 67 separate unauthorized withdrawals from his IOLTA account, diverting over $200,000 to his own use. These unauthorized uses of escrow funds consisted of cash withdrawals, checks made payable to Kinneman, checks payable to Kinneman's other clients, and checks made payable to other individuals unrelated to the transactions for which Kinneman received the funds. Kinneman did not pay off any of the prior lienholders for the five properties in July 1997, as he had informed Option One, but, he eventually paid two of the lienholders as originally instructed. In February 1998, Kinneman removed $69,850 from the IOLTA to pay off a prior lienholder for the 27th Avenue property shortly before a scheduled foreclosure. In July 1998, he removed $56,489.67 from the account to pay off a prior lienholder for the Courtland Place property just prior to its scheduled foreclosure. Kinneman never paid off the pre-existing loans on the remaining three properties.
Federal Bureau of Investigation (FBI) agents interviewed Kinneman on December 30, 1998. Kinneman told the agents that because of financial difficulties related to his divorce, he was unable to pay his bills, and used the Option One funds deposited in his IOLTA account to pay some of them. The trial court found Kinneman guilty of 28 counts of first degree theft, and 39 counts of second degree theft as charged. Kinneman had paid $208,703.10 in restitution into the Court Registry by the date of his sentencing hearing.

II. Restitution
The trial court held a restitution hearing in September 2002. At the hearing, the following parties were represented:
(1) the State;
(2) Kinneman;
(3) Rodney Brown;
(4) Old Republic; [Option One's insurer]
(5) [Option One]; and

*1281 (6) Island Security, [one of the parties which had received funds from Kinneman's IOLTA account and which Brown later sued to recover those funds.[2]]
The State does not challenge the trial court's denial of restitution to Island Security.
Brown requested the following amounts in restitution:

 Amount Stolen ... [from IOLTA account]: $206,770.10
 Attorney Fees and Costs: $100,000.00
 Interest: $108,756.01
 Estimated Total: $415,526.11

The court awarded Brown, as primary victim, $206,770.10, the amount of Kinneman's defalcations, and $40,000 in interest.
Pursuant to its title insurance policy with Option One, Old Republic Title Insurance Co. (Old Republic) paid Nationsbanc Mortgage Corporation, the senior lienholder for the 25th Avenue property, $173,233.55, and Bankers Trust, the senior lienholder for the Brandon Street property, $90,383.18 in order to place Option One in first priority position on these two properties. These were the only two of Brown's five properties for which Option One had title insurance with Old Republic. Old Republic sought a total of $423,649.90 in restitution.
The court found that Old Republic, as a secondary victim, had suffered a loss of $308.616.73, including interest, for its payments to senior lienholders on the 25th Avenue and Brandon Street properties. The court interlineated on the restitution order that "[t]he restitution obligation to Rodney Brown is to be satisfied first before payments begin to Old Republic."
Union Planters Bank, the prior lienholder for the Columbia Street property, had not been paid off as of the date of the restitution hearing. The State and Option One requested that the trial court award Union Planters Bank $54,329.96 in restitution, which would place Option One in first position on the Columbia Street property, and preserve Brown's title to the property. The trial court did not award Union Planters Bank restitution.
Option One sought $10,884.55 in restitution for attorney fees and costs it sustained in litigation related to the Columbia Street property. The trial court denied Option One's request.
On October 7, 2002, Brown filed a motion for disbursement of funds pursuant to the restitution order. On October 8, 2002, the State filed a motion to reconsider the restitution order. In its motion, the State requested that the court reconsider (1) its refusal to order that Kinneman pay restitution to Union Planters Bank, the prior lienholder on the Columbia Street property; and (2) the basis for its award to Rodney Brown. The trial court denied both Brown's motion for disbursement and the State's motion for reconsideration.
Kinneman appeals the trial court's restitution order. The State cross-appeals the trial court's award to Brown and its denial of restitution to Union Planters Bank.

ANALYSIS

I. Standard of Review
"The language of restitution statutes indicates the Legislature's intent to grant broad discretion to sentencing courts in awarding restitution." State v. Ewing, 102 Wash.App. 349, 352, 7 P.3d 835 (2000). Generally, the imposition of restitution will be upheld on appeal absent an abuse of discretion. State v. Enstone, 137 Wash.2d 675, 679-80, 974 P.2d 828 (1999). Discretion is abused only when exercised in a manifestly unreasonable manner or on untenable grounds. Enstone, 137 Wash.2d at 679-80, 974 P.2d 828. "We review questions on the interpretation of the restitution statutes de *1282 novo." State v. Edelman, 97 Wash.App. 161, 165, 166, 984 P.2d 421 (1999), rev. denied, 140 Wash.2d 1003, 999 P.2d 1262 (2000).

II. State's Right to Appeal Restitution Order
Kinneman relies upon State v. A.M.R., 147 Wash.2d 91, 51 P.3d 790 (2002) to support his argument that the State has no right to appeal the trial court's restitution order.
A.M.R. does not support Kinneman's assertion that the State has no right to appeal in this case. At issue in A.M.R. was whether RCW chapter 13.40 and RCW 13.04.033(1) provide the State with the authority to appeal a juvenile restitution order. A.M.R., 147 Wash.2d at 95, 51 P.3d 790. Discussing the State's right to appeal, A.M.R. stated that "[a]dult cases focus on whether an appeal by the State is specifically allowed by statute, court rule, or case law. Those cases turn to RCW 9.94A.585(2) and RAP 2.2(b)(6) allowing appeals of sentences `outside the standard range.'" A.M.R., 147 Wash.2d at 95, 51 P.3d 790 (quoting State v. Williams, 112 Wash.App. 171, 48 P.3d 354 (2002), reversed by State v. Williams, 149 Wash.2d 143, 65 P.3d 1214 (2003)).
RCW 9.94A.585(2) provides:
A sentence outside the standard sentence range for the offense is subject to appeal by the defendant or the state. The appeal shall be to the court of appeals in accordance with rules adopted by the supreme court.
Similarly, RAP 2.2(b)(6) provides that the State may appeal "[a] sentence in a criminal case which is outside the standard range for the offense or which the state or local government believes involves a miscalculation of the standard range."
RCW 9.94A.585(1) prohibits appeal of sentences within the standard range. Our Supreme Court has explained:
This precept arises from the notion that, so long as the sentence falls within the proper presumptive sentencing ranges set by the legislature, there can be no abuse of discretion as a matter of law as to the sentence's length. However, this prohibition does not bar a party's right to challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision. See State v. Mail, 121 Wash.2d 707, 712, 854 P.2d 1042 (1993) (permitting appellate review of a criminal sentence where a defendant can demonstrate that the `sentencing court had a duty to follow some specific procedure required by the [Sentencing Reform Act of 1981], and that the court failed to do so'). Thus, it is well established that appellate review is still available for the correction of legal errors or abuses of discretion in the determination of what sentence applies.
Williams, 149 Wash.2d at 146-147, 65 P.3d 1214 (internal citations omitted). A restitution order becomes part of an offender's sentence once imposed. Edelman, 97 Wash.App. at 166, 984 P.2d 421. But the restitution portion of a sentence is separate and distinct from the standard-range portion, which is identified without exercise of discretion according to the SRA's matrix of crimes and offender scores. The amount of restitution ordered is at the discretion of the trial court. Enstone, 137 Wash.2d at 679-80, 974 P.2d 828. Unlike a standard range sentence, restitution is not entitled to a presumption that there can be no abuse of discretion as a matter of law. Accordingly, appeal must be available to all parties for review of errors of law or for an abuse of discretion in a grant or denial of restitution. We hold that the State has the right to appeal an order of restitution whether or not the duration of the custody portion of the sentence was within the standard range.

III. Restitution Awards
The court's authority to order restitution is purely statutory. State v. Smith, 119 Wash.2d 385, 389, 831 P.2d 1082 (1992). Washington's criminal restitution statute former RCW 9.94A.142(5)[3] states that restitution "shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property" The statute also provides:

*1283 Except as provided in subsection (6) of this section, restitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense. The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime.
Former RCW 9.94A.142(3). A trial court need only find that a victim's injuries were causally connected to the defendant's crime before ordering the defendant to pay restitution for the resulting expenses of the victim. Enstone, 137 Wash.2d at 682, 974 P.2d 828. Although former RCW 9.94A.142(3) requires that restitution be based on "easily ascertainable damages," a victim's loss need not be established with specific accuracy. State v. Wilson, 100 Wash.App. 44, 52, 995 P.2d 1260 (2000). The State has the burden of establishing by a preponderance of the evidence a causal connection between the restitution requested and the crime with which the defendant is charged. State v. Bunner, 86 Wash.App. 158, 160, 936 P.2d 419 (1997). An appellate court will not disturb a sentencing court's restitution award absent an abuse of discretion. State v. Enstone, 137 Wash.2d 675, 679, 974 P.2d 828 (1999).

A. Rodney Brown
Both Kinneman and the State contest the trial court's award of restitution to Rodney Brown. Kinneman asserts that there was insufficient evidence to establish the amount of Brown's loss. The State asserts that Brown is entitled to restitution, but by a different measure than that on which the trial court based its award.
In his restitution memorandum to the court, Brown requested $206,770.10, the sum of Kinneman's thefts, $100,000 for attorney fees and costs, and $108,756.01 in interest, for a total of $415,526.11. The trial court awarded Brown $206,770.10, the amount of Kinneman's defalcations, plus $40,000 in interest, explaining:
This court finds that Rodney Brown was the primary victim of Kinneman's crime. Option One loaned money to Brown for specific purposes. $206,770.10 of these loaned funds were stolen by the defendant. As a direct consequence of the defendant's crime, Brown suffered a loss of $206,770.10 in loaned funds.
In its written ruling, the trial court found that because Kinneman took a specific amount of money from his IOLTA account, Brown must have suffered a loss of that same amount of money.
The record shows that Brown did incur losses as a result of Kinneman's defalcations. However, the record does not support the trial court's determination that Brown's loss equaled the amount of Kinneman's defalcations. The trial court had evidence before it that Brown had sought and received reimbursement from some of the parties whom Kinneman paid with funds stolen from the IOLTA account. As the State argued in its motion for reconsideration, the escrow funds Kinneman embezzled were not intended to go to Brown. Accordingly, the trial court abused its discretion when it concluded that the amount of Brown's losses equaled the amount of Kinneman's defalcations.
Kinneman also asserts that the trial court should not have awarded Brown restitution because Brown's damages are not "easily ascertainable," as required under former RCW 9.94A.142.
Kinneman does not argue that Brown was not damaged by Kinneman's thefts. Determining Brown's losses requires arithmetical calculations not yet before the court. "Restitution must be based upon easily ascertainable damages, but a loss need not be established with specific accuracy." Wilson, 100 Wash.App. at 52, 995 P.2d 1260. The calculations may be somewhat complex. This does not mean that they will not be easily ascertainable. Former RCW 9.94A.142 does not bar award of restitution to Brown as a matter of law.
*1284 Kinneman also argues that the State should not be given a second opportunity to prove the amount of Brown's damages. He argues that under State v. Dedonado, 99 Wash.App. 251, 991 P.2d 1216 (2000) the proper remedy is vacation of Brown's award.[4] The State concedes that vacation is the usual remedy, but asserts that the trial court's refusal to hold an evidentiary hearing requires remand in this case.
Dedonado is factually distinguishable from this case. In Dedonado, a defendant was convicted of taking a motor vehicle without permission. Dedonado, 99 Wash.App. at 253, 991 P.2d 1216. At a restitution hearing, the State presented, as its sole documentation of damage, a form titled "Property Restitution Estimate" stating the amount of damage to the vehicle the defendant had stolen. Dedonado, 99 Wash.App. at 253, 991 P.2d 1216. The defendant objected that the document was insufficient to show a connection or that the replacement parts listed were comparable to those damaged by the defendant. Dedonado, 99 Wash.App. at 253, 991 P.2d 1216. The trial court indicated that the defendant had the burden of notifying the State prior to the restitution hearing that he would challenge the documentation. Dedonado, 99 Wash.App. at 254, 991 P.2d 1216. The court held that the State had not proven a causal connection between the defendant's acts and the victim's actual loss. Dedonado, 99 Wash.App. at 257, 991 P.2d 1216. On appeal, the defendant requested that the court vacate the portions of the restitution award which the State "did not prove within the 180-day period set forth under [former] RCW 9.94A.142" Dedonado, 99 Wash.App. at 257-58, 991 P.2d 1216. The court granted the defendant's request, stating that "[t]he sentencing court improperly imposed [the requirement of prior notice to the State of a challenge to its evidence] upon [the defendant] and ordered restitution based upon evidence that did not establish a causal connection" between the defendant's actions and the damages. Dedonado, 99 Wash.App. at 257, 991 P.2d 1216.
In contrast, here, the trial court did not impose a burden of notice upon Kinneman. As importantly here, both Brown and the State requested an evidentiary hearing. To support its request, the State asserted that although Brown was a victim, the court should require him to show (1) that his loss of equity in the properties at issue was caused by Kinneman's thefts, and (2) an itemization of his expenses, before the court determined how much he should be awarded in restitution. The record in this case clearly shows that Brown suffered a loss, but that the amount of that loss was unclear. The trial court's denial of the State's request contravenes the rule established in Washington that if the evidence is unclear as to the amount of loss, or whether the loss is compensable under the restitution statute, the trial court must hold an evidentiary hearing. Dedonado, 99 Wash.App. at 256, 991 P.2d 1216. Thus, the proper remedy in this case is a remand for an evidentiary hearing on Brown's loss.
Kinneman also maintains that because of Brown's own problems with his brother's abuse of power of attorney and his failure to make loan payments to Option One, Kinneman cannot be found to be a "but for" cause of Brown's loss. Kinneman's argument amounts to an assertion that it was incumbent upon Brown to mitigate his damages. His argument is contrary to the purpose of the restitution statute, which is punitive in nature, and thus has no merit.

B. Old Republic
Kinneman also asserts that there was insufficient evidence to support a restitution award to Old Republic.
*1285 Kinneman failed to pay the mortgage holders on Brown's Brandon Street and 25th Avenue properties. Old Republic, as Option One's insurer, paid the prior mortgage holder on the Brandon St. property $90,383.18, and $173,233.55 to the prior mortgage holder of the 25th Avenue property, or a total of $263,616.73, to place Option One in first priority position. At the restitution hearing, Old Republic argued that as Option One's insurer, it bore the loss of that portion of Kinneman's theft of IOLTA funds which were to have paid off the prior mortgage holders on those two properties. The trial court awarded Old Republic $263,616.73 plus $45,000 in interest.
Kinneman concedes that under subrogation principles discussed in State v. Ewing, 102 Wash.App. 349, 353, 7 P.3d 835 (2000), Old Republic, as Option One's insurer, may be entitled to reimbursement for restitution that otherwise would have been awarded to Option One. (citing Ewing, 102 Wash.App. at 353, 7 P.3d 835) He argues, though, that the State failed to present any evidence showing whether the properties were sold for a profit, and that the trial court erred in failing to take into account any offset for that profit.
Old Republic's title insurance policy with Option One obligated it to expend a total of $263,616.73 in order to retain Option One's first priority on the Brandon Street and 25th Avenue properties. Its expenditures were necessary solely because Kinneman's theft of the IOLTA funds rendered him unable to pay off the senior lienholders for those two properties. In response to the trial court's query as to whether Option One had obtained a windfall because of any equity in the properties, Old Republic's attorney stated:
[N]o, there were no windfalls here. As typically happens with a refinance, there isn't a whole lot of equity that is available to be pulled out. The only equity to be pulled out, to my understanding, was the eighty-some thousand dollars of cash  of part of a cash transaction that went to Mr. Brown. But, again, nobody sustained a windfall.
Kinneman offers no evidence to support his argument that Old Republic obtained a windfall as a result of the trial court's award. Based on the record, we conclude that the trial court did not abuse its discretion when it awarded Old Republic the amount it expended to retain Option One's first priority status on the Brandon Street and 25th Avenue properties.
Kinneman also contends that because the State structured its charges to reflect 67 individual counts of theft, it is now unable to offer direct proof that Old Republic's losses are a result of any one of those thefts. He reasons that none of the 67 individual crimes which he committed can be the cause of the failure of any of the individual escrow transactions on Brown's properties. Kinneman does not dispute that his cumulative thefts rendered him unable to pay off the prior lienholders on the Brandon Street and 25th Avenue properties, or that his failure to do so jeopardized Option One's priority in the properties. Kinneman's cumulative thefts directly led to Old Republic's obligation to expend $263,616.73 to salvage the Brandon Street and 25th Avenue properties for Option One. The trial court did not abuse its discretion when it found that Kinneman's theft caused Old Republic's losses.
Finally, Kinneman asserts that Option One's losses are the result of Kinneman's breach of his contractual obligations to pay off prior lienholders, not the result of his theft. Therefore, he reasons, Old Republic should not receive restitution. Kinneman's failure to meet contractual obligations to pay off prior lienholders and his theft of funds are not mutually exclusive. Kinneman's failure to meet his contractual obligations because he stole funds from his IOLTA does not release him from an obligation to provide restitution for injury caused by those thefts.
The State established by a preponderance of the evidence that Kinneman's theft of funds from his IOLTA caused Option One damage. Under subrogation principles, Old Republic, as Option One's insurer, was entitled to restitution for the portion of those damages it had to bear. Ewing, 102 Wash.App. at 356-57, 7 P.3d 835. The trial court did not abuse its discretion when it awarded Old Republic $263,616.73 plus a reasonable amount of interest.

*1286 C. Union Planters Bank
The State asserts on cross-appeal that the trial court abused its discretion by denying an award of $49,232.26 in restitution to Union Planters Bank, the senior lienholder on the Columbia Street property.
When Option One loaned money to Brown, it directed escrow payment of existing lienholders and that its liens be recorded in first lien position on all five properties. As a result of Kinneman's failure to use funds placed in his IOLTA account to pay off Union Planters Bank, the first lienholder on the Columbia Street property, Option One failed to secure first lienholder position on that property. As of October 2001, the amount needed to pay off Union Planters Bank, the first lienholder on the Columbia Street property, was $49,232.26. Although Kinneman ultimately purchased title insurance for four of Brown's five properties, he never purchased it for the Columbia Street property, as Option One had directed. Therefore, no insurance coverage was available to pay off the prior lienholder on the Columbia Street property. The State argued at the restitution hearing that an award to Union Planters Bank would restore both Brown and Option One to the positions they would have enjoyed on the Columbia Street property had Kinneman used the escrow funds as directed. The trial court did not award restitution funds to Union Planters Bank for its Columbia Street property lien.
The trial court may only award restitution to victims. RCW 9.94A.030(44) defines "victim" as "any person who has sustained emotional, psychological, physical, or financial injury to person or property as a direct result of the crime charged." Under Ewing, subrogation principles permit recovery by insurance companies who directly pay victims for their losses. Ewing, 102 Wash.App. at 356-57, 7 P.3d 835. Since Union Planters Bank had not provided Option One or Brown with money to cover their losses, however, subrogation principles are inapplicable.
The trial court was limited to awarding restitution to Kinneman's victims. It did not err in denying an award to Union Planters Bank because Union Planters Bank was not a "victim" within the meaning of the statute. Regardless of how economical or efficient restitution directly to Union Planters Bank might been, e.g., simultaneously placing both Option One and Brown in the position they would have been in prior to Kinneman's failure to pay off the prior lienholder on the Columbia Street property, a restitution award to a party who was not a victim is not within the scope of the trial court's authority. The trial court did not abuse its discretion when it declined to award Union Planters Bank restitution.
Nevertheless, it is clear that Option One and Brown were entitled to restitution jointly for the amount of the unsatisfied lien held by Union Planters Bank. The record shows that at the restitution hearing, Option One asked in the alternative for the trial court to pay the funds to place it in first lien position "to Brown and Union [Planters] ... [or] you could make it to Option One ... and Union [Planters.]" We believe that the request was sufficient for the trial court to award restitution to Option One. The request for payment directly to Union Planters Bank or jointly to Option One and Union Planters Bank, or jointly to Brown and Union Planters Bank, was functionally a request for an assignment of the restitution payments awarded to Brown or Option One to Union Planters Bank. An assignment after the fact by the recipient of the restitution award would not constitute an award of restitution to one not a victim. On remand the trial court should award Option One and/or Brown restitution to cover the Union Planters Bank lien. The court may in its discretion accept or reject the assignment of restitution to Union Planters Bank.

IV. Attorney Fees and Costs
The State argues on appeal that Old Republic is entitled to $17,835.23, and that Option One is entitled to $10,884.55, in attorney fees and costs as a direct result of Kinneman's theft.
At trial, Old Republic sought $17,185.00 in legal fees and $650.23 in costs for legal work related to Kinneman's theft. Option One sought $10,884.55 for attorney fees and costs. This amount included fees and costs related *1287 to litigation over Kinneman's failure to pay off the senior lienholder on the Columbia Street property and his failure to record Option One's deed of trust. Of the $10,884.55, $4,996.10 relates to fees and costs "incurred in Bankruptcy Court relating to the lien on Columbia Street." Brown provided only a blanket request for $100,000 in fees and costs.
Relying upon State v. Martinez, 78 Wash.App. 870, 884-85, 899 P.2d 1302 (1995), rev. denied, 128 Wash.2d 1017, 911 P.2d 1342 (1996), the trial court denied all claims for attorney fees and costs, stating that "the legal fees sought in this case do not fall within the ambit of the restitution statute."
In Martinez, a defendant was convicted of arson for burning down his own house. Martinez, 78 Wash.App. 870, 899 P.2d 1302. The defendant, before he was identified as the arsonist, sued to collect on his insurance, causing his insurance company to incur attorney fees. Martinez, 78 Wash.App. 870, 899 P.2d 1302. In ordering restitution in the arson case, the trial court included the insurance company's attorney fees. Martinez, 78 Wash.App. 870, 899 P.2d 1302. The Martinez court reversed the order requiring restitution of the insurance company's attorney fees. Martinez, 78 Wash.App. 870, 899 P.2d 1302. One reason for the trial court's reversal was that the fees incurred to defend against a fraudulent insurance claim, were not sufficiently causally related to the crime of arson. Martinez, 78 Wash.App. at 885, 899 P.2d 1302. The Martinez court also explained that "attorney fees and costs should not be recoverable as restitution in a criminal case." Martinez, 78 Wash.App. at 885, 899 P.2d 1302.
The State asserts that that language in State v. Wilson, 100 Wash.App. 44, 995 P.2d 1260 (2000) and State v. Christensen, 100 Wash.App. 534, 997 P.2d 1010 (2000) supports an award to Old Republic and Option One because they were able to show that their attorney fees and costs were a "direct result" of Kinneman's crimes.
In Wilson, a defendant challenged the trial court's award of investigative expenses to her victim, asserting that they should not have been awarded under former RCW 9.94A.142. Wilson, 100 Wash.App. at 49, 995 P.2d 1260. On appeal, the court disagreed, and held that "investigative costs meet a test that conforms to the causal connection requirement of [State v. Enstone, 137 Wash.2d 675, 974 P.2d 828 (1999)] because they were reasonably and rationally related to the crime and consequential in the sense that but for the embezzlement, the victim would not have incurred them." Wilson, 100 Wash.App. at 50, 995 P.2d 1260.
In Christensen, an attorney was convicted of stealing from his clients. Christensen, 100 Wash.App. at 535, 997 P.2d 1010. Prior to the defendant's restitution hearing, one of his victims, who had lost $143,282.81, hired an attorney to sue the defendant. Christensen, 100 Wash.App. at 536, 997 P.2d 1010. She eventually settled with his malpractice insurance carrier for less than the full amount of her losses, and her attorney then deducted another $42,381.38 in fees and costs from her settlement. Christensen, 100 Wash.App. at 536, 997 P.2d 1010. At a restitution hearing, the trial court ordered the defendant to pay the difference between the amount of her loss and the amount already restored to her. Christensen, 100 Wash.App. at 536, 997 P.2d 1010. The defendant appealed, arguing that the restitution amounted to reimbursing the victim for attorney fees in a civil case, in violation of the American rule. Christensen, 100 Wash.App. at 537, 997 P.2d 1010. The court on appeal stated:
We fail to see how a rule designed to regulate recovery of attorney fees in civil cases has any application in deciding an award of restitution in a criminal proceeding.
The "American rule" governing attorney fees precluded [the victim] only from recovering her attorney fees as part of the costs of litigation in her civil suit against [the defendant]. Because she had to pay attorney fees to get any recovery at all in the civil suit, she remained considerably out of pocket with respect to the funds [the defendant] stole from her. The trial court, rightly concerned with making [the victim] whole, ordered [the defendant] to make up the shortfall. This was not an abuse of discretion under the restitution statute.
*1288 Christensen, 100 Wash.App. at 538, 997 P.2d 1010.
We believe the trial court erred in applying the language in Martinez as a prohibition against including attorneys fees in the consideration of restitution. Wilson and Christensen illustrate appropriate considerations for attorney fees in granting restitution. Both Option One and Old Republic submitted detailed statements of their fees and costs. A portion of Option One's fees and costs were related to its investigation of title problems and monitoring senior lienholder foreclosure on the Columbia Street property, both of which are alleged to be direct results of Kinneman's thefts. Old Republic showed that its expenses included "investigating Kinneman's defalcations, ... undertaking efforts to obtain information ... from Kinneman," and working with both law enforcement officials and Option One's counsel regarding Kinneman's thefts. To the extent that Old Republic and Option One are able to segregate their fee and cost claims, and to demonstrate a causal connection between them and Kinneman's crimes, those fees and costs are properly considered by the court in ordering restitution. We reverse the trial court's initial refusal to award fees and remand for determination of the amount of fees and costs causally related to the claims.
The State further argues that Brown should be afforded an evidentiary hearing to show what portion of the attorney fees and costs he requested should be awarded as restitution. Brown's request for attorney fees and costs should be considered by the trial court at the evidentiary hearing.

V. Conclusion
We affirm the trial court's restitution order with respect to Old Republic. We reverse the trial court's denial of an award to Union Planters Bank, and remand with respect to the amount of restitution to place Option One in first priority position on the Columbia Street property. We reverse as to attorney fees to Old Republic and Option One. We also reverse the trial court's award to Brown and remand for an evidentiary hearing to establish Brown's damages and fees and costs award.
BECKER and KENNEDY, JJ., concur.
NOTES
[1] Per the parties' agreement, however, Kinneman was to have paid Brown only $84,431. The record is unclear as to why Kinneman overpaid W.M. Brown.
[2] Rodney Brown filed a motion for summary judgment against Island Security Systems, Inc. (Island Security) in King County Superior Court in November 2001. The record shows that Brown sought repayment from parties whom Kinneman had paid from his IOLTA account funds. The record also indicates that some of those individuals repaid Brown, but that others refused to do so.
[3] Former RCW 9.94A.142 (2000), recodified as RCW 9.94A.753 (Laws of 2001, ch. 10, § 6).
[4] In Dennis, the court reversed a portion of a restitution order because it found that the State had failed to present an adequate factual basis supporting that part of the award. Dennis, 101 Wash.App. at 228, 6 P.3d 1173. Explaining its reason for concluding that remand was not the proper remedy in that case, the Dennis court stated:

[I]f the State fails to establish a causal connection between [sic] defendant's actions and the damages, this court must vacate the restitution order. Dedonado, 99 Wash.App. at 257-58, 991 P.2d 1216. The reason for this rule is that the State must not be given a further opportunity to carry its burden of proof after it fails to do so following a specific objection.
Dennis, 101 Wash.App. at 229, 6 P.3d 1173.