# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49111-7-II |
| Respondent, | |
| v. | |
| MICHAEL ANTHONY JACKSON, JR., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — A jury returned verdicts finding Michael A. Jackson Jr. guilty of first degree unlawful possession of a firearm, eight counts of violation of a protection order, and fourth degree assault as a lesser-included crime to a second degree assault charge.[1]  Jackson appeals from the restitution order entered following his conviction of fourth degree assault, arguing that the sentencing court exceeded its statutory authority by ordering restitution for certain injuries sustained by the victim.[2]  In his Statement of Additional Grounds for Review (SAG), Jackson appeals from all his convictions, asserting that (1) his defense counsel was ineffective for failing to adequately impeach the victim and another witness during their testimony, (2) the trial court erred by admitting audio recordings of voicemails absent adequate

---

[1] The jury also returned verdicts finding Jackson not guilty of a second count of second degree assault and not guilty of unlawful imprisonment.  The jury returned special verdicts finding that Jackson and the victim were members of the same family or household when he committed fourth degree assault and violations of a protection order.

[2] Jackson also requests that we exercise our discretion to waive appellate fees in this matter. Because Jackson's current or likely future ability to pay appellate costs may be addressed by a commissioner of this court under RAP 14.2, we defer this matter to our commissioner in the event that the State files a cost bill.

foundation and in violation of the "Privacy Act," chapter 9.73 RCW, (3) the State failed to present sufficient evidence in support of his unlawful possession of a firearm conviction, (4) the trial court judge was biased against him, and (5) the trial court violated his speedy trial right. We affirm Jackson's convictions, reverse the restitution order, and remand for a new restitution hearing consistent with this opinion.

FACTS

On the evening of February 7 and into the early morning of February 8, 2015, Trinity Lee and Lee's boyfriend, Jackson, were having drinks at a bar in Tacoma. Jackson went outside to smoke a cigarette and Lee was approached by a man she had met the previous summer. When Jackson came back inside, the couple began arguing about Lee's conversation with the man. Lee left the bar and drove to the couple's home without Jackson. Lee and Jackson dispute what happened next.

According to Lee, she was at the home for approximately 30 to 45 minutes before leaving to pick Jackson up at the bar. After Lee entered her car, she heard Jackson yelling, looked up and saw him pointing a gun. Jackson told Lee to roll down the window or he was going to shoot it. After Lee rolled down the window, Jackson repeatedly punched her in the face and tried to open her door. Lee eventually opened her door and began stepping out of the vehicle when Jackson slammed the door against her right leg, causing her ankle to fracture. Jackson pulled Lee into the home, punched her face and stomach, and kicked her injured leg. Lee crawled into the bathroom and locked the door, but Jackson forced it open. Jackson eventually took Lee to the hospital.

According to Jackson, he walked home from the bar but Lee was not at the home when he arrived. Lee arrived in her car shortly after and the couple began arguing. Jackson reached in the car and took the keys from the ignition. He told Lee to get out of the driver's seat, and she climbed over the console into the passenger seat. Jackson then drove to a store, purchased some items, and returned home. Jackson and Lee started to watch a movie and smoke marijuana. After about an hour, Lee walked to a back bedroom and began yelling. After Jackson asked what happened, Lee told him that she had fallen and twisted her ankle. Jackson took Lee to the hospital.

Dr. Alejandro Gonzalez treated Lee at the emergency room. After examining X-rays of Lee's right ankle, Gonzalez determined that it had been fractured in multiple places. Gonzalez opined that it would have taken a significant amount of force or trauma to fracture Lee's ankle. After Lee was treated, she and Jackson left the hospital and returned home.

A few days later, Lee was picked up from her home by her cousin, Jennifer Tresner. When they arrived at Tresner's home, Lee told her about the incident leading to her injuries. Tresner eventually convinced Lee to report the incident to police. Pierce County Sheriff's Deputy Tyson Vea came to Tresner's home, took a statement from Lee, and photographed Lee's injuries. Police arrested Jackson on February 12. On the following day, a court order was entered prohibiting Jackson from contacting Lee.

After Jackson's arrest, Lee found a key to his safe, which Lee stated Jackson could also open using his fingerprint. Inside the safe, Lee found two handguns, one of which Lee stated was the same handgun Jackson had used during the February 8 incident. Lee also saw

3

ammunition and an envelope containing cash inside of the safe. Pierce County Sheriff's Detective Daren Witt obtained a search warrant and seized the handguns and ammunition.

On February 18, 2016, the State charged Jackson by amended information with one count of second degree assault based on reckless infliction of substantial bodily injury, a second count of second degree assault based on an assault with a firearm, unlawful imprisonment, first degree unlawful possession of a firearm, and eight counts of violation of a protection order based on alleged contacts Jackson had made with Lee after his arrest. The matter proceeded to a jury trial at which witnesses testified consistently with the facts above. Additionally, Dr. Thomas Keskey, a radiologist who had examined Lee's X-rays, testified that Lee's ankle fractures would likely have been caused by "a rolling of the ankle, either turning it or turning out that causes enough force to break the bone or cause ligament damage." Report of Proceedings (RP) at 561.

At the close of evidence, the trial court instructed the jury on fourth degree assault as a lesser-included crime to second degree assault by infliction of substantial bodily injury. During closing argument, the State elected Jackson's alleged conduct in slamming the door on Lee's leg as the basis for its charge of second degree assault by infliction of substantial bodily injury. The jury returned verdicts finding Jackson not guilty of second degree assault by infliction of substantial bodily injury, guilty of the lesser-included charge of fourth degree assault, not guilty of unlawful imprisonment, not guilty of second degree assault by use of a deadly weapon, guilty of unlawful possession of a firearm, and guilty of all eight counts of violation of a protection order. The jury also returned special verdicts finding that Jackson and Lee were members of the same family or household with respect to the fourth degree assault and violation of a protection order convictions.

At sentencing, the State requested restitution for Lee's injuries. The State noted the following at the sentencing hearing:

> I understand the jury did not find Mr. Jackson guilty of Assault in the Second Degree on what—of what happened that night. They did find him guilty of Assault Fourth Degree, evidence of bruising. They did not find he broke her ankle. They did find he assaulted her. There was definitely evidence of an assault. There was bruising on her eyes, her arms, on her legs.

RP at 1012.

The trial court held a restitution hearing on August 30, 2016, before a different trial court judge. The State stated that Lee's insurance company was subrogating her restitution claim and was requesting $14,871.87. Jackson objected to restitution, arguing that he had been acquitted of second degree assault for his alleged conduct in breaking Lee's ankle. Lee testified at the restitution hearing that the medical expenses for which she was seeking restitution related to her leg, which "was broken with the car door and blunt force" by Jackson. RP (Aug. 30, 2016) at 7. The trial court ordered Jackson to pay the full restitution amount requested, reasoning as follows:

> Okay. Well, again, I wasn't the trial judge so I don't know exactly what the testimony was, but it's clear that quite a bit of medical costs were incurred as a result of the injuries Ms. Lee suffered. Ms. Lee testified that Mr. Jackson assaulted her and that's the cause of it and Mr. Jackson was convicted of Assault in the Fourth Degree.
> I don't know why Assault in the Fourth Degree and not Assault in the Second Degree, but that seems to me to be the only cause of this. This is fairly clearly ascertainable. If I read medical code speak, I could tell you exactly what all this is, but it looks like the overwhelming majority, if not everything, is related to ankle and knee injury, so the fact that she may have injured her ankle consistent with rolling it doesn't have much to do with a broken leg that I can see.
> So I think the State has shown that this is clearly ascertainable related to the assault.

RP (Aug. 30, 2016) at 13-14. Jackson appeals.

5

ANALYSIS

I. RESTITUTION

Jackson first contends that the sentencing court exceeded its statutory authority by ordering restitution for damages unrelated to any of the crimes for which he had been convicted. We agree, reverse the trial court's restitution order, and remand for proceedings consistent with this opinion.

A trial court's authority to order restitution derives entirely from statute. *State v. Smith*, 119 Wn.2d 385, 389, 831 P.2d 1082 (1992). Former RCW 9.94A.753 (2003) authorizes a sentencing court to impose restitution against a convicted criminal defendant, stating in relevant part:

> (3) . . . [R]estitution ordered by a court pursuant to a criminal conviction shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury.
> . . . .
> (5) Restitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property . . . .

A restitution order must be based on a causal relationship between the crime proven and the damages for which the victim seeks restitution. *State v. Dauenhauer*, 103 Wn. App. 373, 378, 12 P.3d 661 (2000). A causal relationship exists if the victim would not have incurred the claimed losses "but for" the defendant's commission of the crime. *State v. Acevedo*, 159 Wn. App. 221, 230, 248 P.3d 526 (2010). "The State must prove this causal connection between the expenses and the offense by a preponderance of the evidence." *State v. Cawyer*, 182 Wn. App. 610, 617, 330 P.3d 219 (2014). Courts determine whether a causal connection exists by looking at the facts underlying the defendant's crime of conviction; such determinations are reviewed de

novo. *Acevedo*, 159 Wn. App. at 230. We otherwise review a sentencing court's imposition of restitution for an abuse of discretion. *State v. Kinneman*, 122 Wn. App. 850, 857, 95 P.3d 1277 (2004), *aff'd*, 155 Wn.2d 272, 119 P.3d 350 (2005).

Here, the State charged Jackson with second degree assault based on the allegation that he had intentionally assaulted Lee and thereby recklessly inflicted substantial bodily harm. RCW 9A.04.110(4)(b) provides, and the jury was instructed, "'Substantial bodily harm' means bodily injury which involves a temporary but substantial disfigurement, or which causes a temporary but substantial loss or impairment of the function of any bodily part or organ, or which causes a fracture of any bodily part." CP at 148.

The only evidence presented at trial showing that Lee had suffered "substantial bodily injury" under this definition was evidence of her ankle fractures. And at closing, the State clearly elected Jackson's conduct in slamming the car door against her leg as the basis for its allegation that Jackson caused such substantial bodily injury. Thus, the jury's verdict on this charge turned on whether the State had proved that Jackson caused Lee's ankle fractures through his alleged conduct in slamming the car door on her leg. But the jury returned a not guilty verdict on this second degree assault charge, instead finding Jackson guilty of the lesser-included crime of fourth degree assault.

Looking to the facts underlying Jackson's fourth degree assault conviction, including facts implicit in the jury's verdict of not guilty as to the greater crime of second degree assault, there exists no causal connection between his fourth degree assault conviction and losses Lee incurred as a result of her fractured ankle. *Acevedo*, 150 Wn. App. at 230. Accordingly, the sentencing court erred by concluding otherwise, and we reverse its restitution award.

7

Because the sentencing court had erroneously concluded that a causal connection existed between Jackson's fourth degree assault and Lee's fractured ankle, it did not segregate the medical expenses incurred as a result of Lee's ankle fractures from those expenses potentially incurred as a result of her other injuries causally related to Jackson's fourth degree assault. We therefore remand for a new restitution hearing.

## II. SAG

A.      *Ineffective Assistance of Counsel*

In his SAG, Jackson first contends that his defense counsel was ineffective for failing to impeach Lee with evidence of her prior third degree theft conviction and for failing to impeach Lee and witness Mandellia Claiborne with their prior inconsistent statements. We disagree.

To demonstrate ineffective assistance of counsel, Jackson must show both deficient performance and resulting prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). To show deficient performance, Jackson must show that defense counsel's performance fell below an objective standard of reasonableness. *Reichenbach*, 153 Wn.2d at 130. And to show resulting prejudice, Jackson must show a reasonable probability that, but for counsel's purportedly deficient performance, the outcome of his trial would have differed. *Reichenbach*, 153 Wn.2d at 130. If he fails to make either showing, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). Additionally, we strongly presume that counsel's performance was reasonable and, to rebut this presumption, Jackson "bears the burden of establishing the absence of any '*conceivable* legitimate tactic explaining counsel's performance.'" *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *Reichenbach*,

153 Wn.2d at 130). Ineffective assistance of counsel claims present mixed questions of law and fact, which we review de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

Jackson cannot show any prejudice resulting from his defense counsel's decision not to impeach Lee with evidence of her prior third degree theft conviction because this evidence was introduced by the State during direct examination. As such, any evidence presented by the defense of Lee's prior conviction would have been cumulative and would not have had any identifiable impact on the outcome of Jackson's trial. Accordingly, Jackson fails to demonstrate ineffective assistance on this basis.

Jackson's claim that his counsel was ineffective for failing to impeach Lee and Claiborne with prior inconsistent statements is inadequately briefed and does not merit judicial review. Although RAP 10.10 does not require a criminal defendant's SAG to reference the record or cite to legal authority, it must "inform the court of the nature and occurrence of alleged errors," and we are "not obligated to search the record in support of claims made" in a SAG. Here, Jackson merely states that his counsel was ineffective for failing to impeach Lee and Claiborne with prior inconsistent statements, but he does not identify any specific prior inconsistent statement supporting his claim. Moreover, the record shows that Jackson's defense counsel repeatedly confronted Lee and Claiborne with prior inconsistent statements during cross examination. Because Jackson has not sufficiently informed this court of the nature and occurrence of alleged errors related to this issue, we do not further address it.

B.      *Admission of Voicemail Recordings*

Next, Jackson contends that the trial court erred by admitting recordings of two voicemail messages to Lee purported made by Jackson because (1) there was insufficient foundation

presented to determine the recordings' authenticity and (2) their admission was barred by the Privacy Act, chapter 9.73 RCW. On both points we disagree.

The trial court admitted two audio recordings of voicemails taken from Lee's phone. The first audio recording was made when Lee inadvertently called one of her two cell phones while she was conversing with Jackson. The second audio recording was made when Jackson left a message on Lee's cell phone. Before the start of testimony, defense counsel conceded that the first audio recording contained a threat conveyed by one of the speakers in the conversation and, thus, its admission was not barred by the Privacy Act under the provisions of RCW 9.73.030(2)(b).

1. *Authenticity*

ER 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." A proponent of tape recorded evidence may authenticate it "by calling a foundational witness to testify (a) that the witness has personal knowledge of the events recorded on the tape, (b) that the witness has listened to the tape and compared it with those events, (c) and that the tape accurately portrays those events." *State v. Jackson*, 113 Wn. App. 762, 766-67, 54 P.3d 739 (2002); ER 901(b)(1). Additionally, where, as here, "the tape records human voices, the foundational witness . . . usually must identify those voices." *Jackson*, 113 Wn. App. at 767.

Here, prior to admission of the first audio recording, Lee testified (1) about the circumstances in which the recording was made, including that she was present during the recorded conversation, (2) that she had listened to the recording prior to coming to court, (3) that

the recording contained her and Jackson's voices, and (4) that the recording was of their conversation on the way to the hospital. This foundational testimony was sufficient to authenticate the first admitted recording. *Jackson*, 113 Wn. App. at 766-67; ER 901(b)(1).

Similarly, prior to admission of the second recording, Lee testified that (1) the voicemail message was left on her personal cell phone, (2) the voicemail system on her cell phone contains an automated message informing the caller to leave a message, (3) the voicemail message was recorded by her cell phone during a certain date range, and (4) the voice leaving the message was that of Jackson. This foundational testimony was sufficient to authenticate the second admitted recording. ER 901(b)(1), (5).

2. *Privacy Act*

Jackson also challenges the admission of the voicemail recordings under the Privacy Act. However, with regard to the first recording, Jackson's defense counsel conceded that its admission was not barred under the Privacy Act. Jackson does not challenge the propriety of his defense counsel's decision in this regard.[3] Because defense counsel conceded that the Privacy Act did not bar admission of the first voicemail recording, the issue is not preserved for appeal.

Regarding the second voicemail recording, our Supreme Court has held that a party impliedly consents to a recording of his or her communications when the party knows that such communications will be recorded. *State v. Townsend*, 147 Wn.2d 666, 675-76, 57 P.3d 255 (2002). In so holding, the *Townsend* court, 147 Wn.2d at 675-76, cited with approval *In re*

---

[3] Even if Jackson had asserted ineffective assistance based on his counsel's concession, we could not review the issue on the record before us as it does not contain the audio exhibit or a transcription of the exhibit.

No. 49111-7-II

*Marriage of Farr*, 87 Wn. App. 177, 184, 940 P.2d 679 (1997), in which Division One of this

court stated:

> While it is unlawful to record private telephone communications without consent
> under RCW 9.73.030(1)(a), we agree with the lower court that Martin waived any
> statutory privacy right by leaving messages on an answering machine. A party
> consents to his or her communication being recorded when another party has
> announced, "in any reasonably effective manner," that the conversation will be
> recorded. RCW 9.73.030(3). An answering machine's only function is to record
> messages. Knowing that his messages were being recorded, Martin had no
> reasonable expectation of privacy.

As in *Townsend* and *Farr*, here Jackson impliedly consented to be recorded when he left a

message on Lee's voicemail because he knew the message would be recorded. Because Jackson

impliedly consented to his communication being recorded, RCW 9.73.050 did not bar admission

of the voicemails for violating the provisions of RCW 9.73.030.

C.    *Sufficiency of the Evidence*

Next, Jackson appears to argue that the State failed to present sufficient evidence in

support of his first degree unlawful possession of a firearm conviction. Again, we disagree.

Evidence is sufficient to support a guilty verdict if any rational trier of fact, viewing the

evidence in the light most favorable to the State, could find the elements of the charged crime

beyond a reasonable doubt. *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000). "In

claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence

and all reasonable inferences that can be drawn from it." *State v. Homan*, 181 Wn.2d 102, 106,

330 P.3d 182 (2014). We defer to the jury on issues of conflicting testimony, credibility of

witnesses, and the persuasiveness of the evidence. *State v. Andy*, 182 Wn.2d 294, 303, 340 P.3d

840 (2014).

12

To convict Jackson of first degree unlawful possession of a firearm as charged and instructed here, the State had to prove beyond a reasonable doubt that Jackson (1) had been previously convicted of a serious offense, and (2) knowingly possessed or controlled a firearm. Former RCW 9.41.040 (2014). Here, Jackson stipulated to having been convicted of a serious offense prohibiting his possession of firearms and, thus, that element is not at issue.

With regard to possession or control, the State may prove this element by showing Jackson had actual or constructive possession of a firearm. *State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994). To establish constructive possession, the State had to show that Jackson had dominion and control over a firearm. *State v. Raleigh*, 157 Wn. App. 728, 737, 238 P.3d 1211 (2010). Control need not be exclusive, but the State must show more than mere proximity to the firearm. *Raleigh*, 157 Wn. App. at 737. Here, the State presented sufficient evidence from which the jury could find that Jackson had both actual and constructive possession of a firearm.

Lee testified that Jackson actually possessed a handgun when he pointed it and threatened to shoot out her car window. She further testified that, after the incident, she had opened his safe to find two handguns, one of which was the handgun he possessed when threatening to shoot out her car window. She also testified that Jackson could access his safe through the use of his fingerprint. This testimony was sufficient for a jury to find that Jackson unlawfully possessed a firearm. Jackson's argument with regard to evidentiary sufficiency appears to challenge Lee's credibility and the weight of evidence—in that there were no fingerprints found on the firearms. But these considerations are inappropriate when reviewing the sufficiency of evidence in support of a conviction. *Andy*, 182 Wn.2d at 303. Accordingly, Jackson fails to demonstrate that the

State failed to present sufficient evidence in support of his first degree unlawful possession of a firearm conviction.

D.      *Bias*

Next, Jackson contends that the trial court judge was biased against him. But Jackson does not provide any examples tending to show that the trial court judge exhibited bias. His conclusory allegation that the trial court judge was biased is insufficient to merit judicial review under RAP 10.10 and, thus, we do not further address it.

E.      *Speedy Trial Right*

Finally, Jackson contends that his speedy trial right was violated. The entirety of Jackson's argument with regard to his speedy trial right is "my speedy trial rights were also violated even though I invoked them." SAG at 2. The nature of Jackson's speedy trial argument cannot be discerned from this conclusory statement and we will not search the record to support his claim. RAP 10.10(c). Moreover, while the record shows that the trial court granted nine or ten trial continuances that were requested by both the State and defense counsel but over Jackson's objection, a transcript from some, but not all, of the hearings addressing these continuance motions was included in the appellate record. Therefore, even if we were inclined to engage in search of the record to support Jackson's speedy trial claim, we could not do so on the record before us. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) ("If a defendant wishes to raise issues on appeal that require evidence or facts not in the existing trial record, the appropriate means of doing so is through a personal restraint petition."). Accordingly, we do not further address this issue.

No. 49111-7-II

We affirm Jackson's convictions but reverse the restitution order and remand for a new restitution hearing consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

 

Worswick, J.

We concur:

Bjorgen, C.J.

Maxa, J.