119 P.3d 350 (2005)
STATE of Washington, Respondent,
v.
Zachary A. KINNEMAN, Petitioner.
No. 76051-9.
Supreme Court of Washington, En Banc.
Argued June 30, 2005.
Decided September 8, 2005.
*351 Nancy P. Collins, Seattle, for Zachary A. Kinneman.
John Christopher Carver, Seattle, for State of Washington.
MADSEN, J.
¶ 1 Zachary Kinneman, an attorney, was convicted of 67 counts of theft in connection with real estate transactions that he handled for a client. Kinneman raises several challenges to an order of restitution, including the question whether Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), apply to restitution under RCW 9.94A.753.[1] We conclude that Apprendi and Blakely do not apply and affirm the Court of Appeals' decision on the remaining issues.

FACTS
¶ 2 Mr. Kinneman was a Washington licensed attorney who was hired in June 1997 to act as the escrow and closing agent for five separate real estate refinance transactions involving five properties in Seattle. The borrower in these transactions was Rodney E. Brown and the lender was Option One Mortgage Company (Option One). Brown (who was in prison for unrelated offenses) had executed a power of attorney enabling his brother William Michael Brown *352 (W.M.Brown) to handle his financial matters. W.M. Brown applied for the loans from Option One in his brother's name,[2] and arranged with a mortgage broker for Kinneman to serve as escrow agent. In June 1997, Option One transferred $499,506.96 to Kinneman's trust account.
¶ 3 Kinneman did not carry out Option One's escrow/closing instructions. He failed to record deeds of trust. And although he purchased title insurance for four of the properties, he did not for the fifth (the Columbia Street property). Initially he also failed to pay off the prior lienholders on all of the properties, although he eventually paid the prior lienholders on two properties in order to avoid looming foreclosure proceedings. He never paid the prior lienholders on the other three properties. Kinneman paid W.M. Brown about $92,000.00, approximately $8,000.00 more than he had been instructed to pay to the borrower.
¶ 4 Between June 17, 1997, when the first of the loan proceeds were transferred to the account, and October 22, 1998, Kinneman made nearly 70 unauthorized withdrawals from his trust account that were not related to the escrow/closing instructions. In all, Kinneman diverted over $200,000.00 to his own use.
¶ 5 On December 30, 1998, Kinneman disclosed in an interview with FBI (Federal Bureau of Investigation) agents that he used the Option One funds because of financial difficulties related to his divorce. On June 20, 2000, the State charged Kinneman with 77 counts of theft (30 counts of first degree theft and 47 counts of second degree theft)some of these counts were later dismissed on the State's motion. Kinneman was convicted of 67 counts of theft.[3]
¶ 6 When Kinneman was sentenced on February 8, 2002, he tendered a $208,713.10 check as restitution. On September 20, 2002, a restitution hearing was held.[4] The court ordered restitution of $206,770.10 to Rodney Brown, the amount of the Option One funds that Kinneman stole,[5] plus $40,000.00 in interest, a total of $246,770.10.[6] Clerk's Paper's (CP) at 16. The court also ordered restitution of $308,616.73 to Old Republic Title Insurance Company (Old Republic). Id. Old Republic was Option One's title insurance company on the two properties that Kinneman had purchased title insurance for but on which he failed to pay the prior lienholders (the 25th Avenue and Brandon Street properties). Old Republic paid the senior lienholders on these properties in order to put Option One in first priority position. The restitution to Old Republic included $263,616.73 for paying off the liens, plus interest.[7] The court declined to order restitution for attorney fees and costs that Old Republic claimed were causally related to Kinneman's thefts. The court directed that restitution to Rodney Brown was to be satisfied before any restitution was to be paid to Old Republic.
*353 ¶ 7 Kinneman appealed the restitution order. The State cross-appealed. The Court of Appeals affirmed in part and reversed in part. State v. Kinneman, 122 Wash.App. 850, 95 P.3d 1277 (2004), review granted, 154 Wash.2d 1001, 113 P.3d 482 (2005). The Court of Appeals held that the State was entitled to appeal the restitution order, that the superior court abused its discretion in ordering restitution to Rodney Brown in the total amount that Kinneman stole, and that the order of restitution to Old Republic was not an abuse of discretion. The Court of Appeals remanded for an evidentiary hearing to determine Brown's loss and to determine restitution in the amount, if any, of restitution for the attorney fees and costs incurred by Brown, Old Republic, and Option One that were causally related to Kinneman's crimes.

ANALYSIS
¶ 8 Kinneman argues that under the Sixth Amendment he is entitled to a jury determination of the facts essential to restitution.
¶ 9 In Apprendi, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S.Ct. 2348; see Ring v. Arizona, 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ("[i]f a State makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that factno matter how the State labels itmust be found by a jury beyond a reasonable doubt"). In Blakely, the Court explained that "`statutory maximum'" means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2537 (emphasis omitted). It is "not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. (emphasis omitted). In Blakely, the Court held that the right to a jury trial was violated by imposition of an exceptional sentence upward where, under Washington's Sentencing Reform Act, chapter 9.94A RCW (SRA), a judge was authorized to impose an exceptional sentence only upon finding some additional fact beyond the jury's verdict. Blakely, 124 S.Ct. at 2537-38.[8]
¶ 10 The first question is whether, as Kinneman argues, punishment for purposes of Apprendi and Blakely includes punishments other than prison sentences. The State maintains that Apprendi and Blakely do not apply to restitution because they deal solely with imprisonment, which is purely punitive. Punishment includes both imprisonment and other criminal sanctions. See United States v. Nachtigal, 507 U.S. 1, 3, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) ("the word `penalty' refers both to the term of imprisonment and other statutory penalties"). We do not understand Apprendi and Blakely to apply only to punishment in the form of prison sentences; both cases refer to punishment and neither limits its analysis to imprisonment.
¶ 11 The State next says that not all punishments are within the scope of the Sixth Amendment guaranty to trial by jury, and that there is a distinction between imprisonment and other components of a criminal's sentence that shows that the Court did not intend Blakely to apply to restitution. The State relies on Blanton v. City of North Las Vegas, Nevada, 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) and Nachtigal, 507 U.S. 1, 113 S.Ct. 1072 (applying Blanton).
¶ 12 In Blanton, the Court was asked whether there was a right to a jury trial for an offense punishable by a maximum term of six months' imprisonment. The Court noted that it had long been settled that petty crimes or offenses were not within the scope of the Sixth Amendment right to a jury trial. In determining whether an offense is a petty offense, the most relevant criterion is the maximum authorized penalty, with the primary emphasis on the length of the prison *354 term. Blanton, 489 U.S. at 541-42, 109 S.Ct. 1289.
¶ 13 Blanton does not support the State's argument that Apprendi and Blakely do not apply to restitution. While Blanton says the length of imprisonment is the most important criterion, it also explains that if the punishment is a prison term of less than six months the crime is presumed petty, but a defendant is nevertheless entitled to a jury trial if he can show that additional statutory penalties, in conjunction with the maximum authorized period of incarceration, are so severe that they show legislative intent to treat the offense as a serious one. Id. at 543, 109 S.Ct. 1289. Thus, all of the punishment imposed may be considered when deciding whether the defendant has overcome the presumption that an offense punishable by a prison term of six months or less is a petty offense. Punishment other than a prison sentence may tip the scales and require a jury trial. See also Nachtigal, 507 U.S. at 3, 113 S.Ct. 1072. We do not agree that the only punishment falling within Apprendi and Blakely is a prison term.
¶ 14 The next question is whether restitution is punishment. In Washington restitution is both punitive and compensatory. E.g., State v. Moen, 129 Wash.2d 535, 539 n. 1, 919 P.2d 69 (1996); State v. Barr, 99 Wash.2d 75, 79, 658 P.2d 1247 (1983); State v. Ewing 102 Wash.App. 349, 352-53, 7 P.3d 835 (2000) (restitution is primarily punitive).[9] The State agrees that restitution is a "hybrid" that is both punitive and compensatory. The State argues, however, that restitution is not sufficiently punitive to bring it within the ambit of Apprendi and Blakely. The State relies on State v. Shultz, 138 Wash.2d 638, 980 P.2d 1265 (1999), where we addressed an ex post facto challenge to amendments to former RCW 9.94A.142 that extended trial courts' jurisdiction over restitution orders. The State refers to our observation in Shultz that restitution contains a strong remedial component because it is statutorily connected to the victims' losses. Shultz, 138 Wash.2d at 643-44, 980 P.2d 1265. However, we found it unnecessary to decide whether restitution is penal or remedial because, even if punitive, the amendments did not alter the quantum of punishment and therefore did not violate the ex post factor prohibition. Id. at 644, 980 P.2d 1265. Moreover, while we noted the statutory language indicating that restitution is tied to the victim's losses, we did not address another part of the restitution statute that provides that "[t]he amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." RCW 9.94A.753(3). This part of the restitution statute shows that restitution is also strongly punitive because it authorizes restitution in an amount that exceeds the amount necessary to compensate the victim. See Ewing, 102 Wash.App. at 353, 7 P.3d 835. As we later commented in State v. Hughes, 154 Wash.2d 118, 155, ¶ 79, 110 P.3d 192 (2005), "`[u]nder the sentencing reform act, restitution is part of an offender's sentence'" (quoting State v. Edelman, 97 Wash.App. 161, 166, 984 P.2d 421 (1999)).[10] Restitution is at least as punitive as compensatory.
*355 ¶ 15 But while restitution is punishment, it does not require jury fact-finding under the post-Blakely decision in United States v. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In Booker the Court held that provisions making the Federal Sentencing Guidelines mandatory and setting forth the standard of review on appeal were unconstitutional because they violated the Sixth Amendment right to a jury trial. The Court severed these provisions, leaving the Guidelines as effectively advisory. The Sixth Amendment was then not implicated because statutes that do not impose mandatory, binding requirements on sentencing judges do not implicate the right to a jury trial. Booker, 125 S.Ct. at 750 ("when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant"); id. at 764.
¶ 16 Washington's restitution statutes are more like the advisory Federal Sentencing Guidelines after Booker than the mandatory sentencing guidelines found to violate the Sixth Amendment in Blakely. RCW 9.94A.753(5) provides that "[r]estitution shall be ordered whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property ... unless extraordinary circumstances exist which make restitution inappropriate in the court's judgment." RCW 9.94A.753(3) provides that restitution "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury... [and] may include the costs of counseling reasonably related to the offense." As noted, the statute also provides that "[t]he amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime." Id.
¶ 17 While the restitution statute directs that restitution "shall" be ordered, it does not say that the restitution ordered must be equivalent to the injury, damage or loss, either as a minimum or a maximum, nor does it contain a set maximum that applies to restitution. Instead, RCW 9.94A.753 allows the judge considerable discretion in determining restitution, which ranges from none (in some extraordinary circumstances) up to double the offender's gain or the victim's loss. See Hughes, 154 Wash.2d at 153, ¶ 76, 110 P.3d 192 ("[t]he trial court has great power and discretion in issuing restitution"); State v. Enstone, 137 Wash.2d 675, 679, 974 P.2d 828 (1999) (when authorized by statute, imposition of restitution is generally within the discretion of the trial court, and absent abuse of discretion will not be disturbed on appeal).
¶ 18 Given the broad discretion accorded the trial judge by the statute, the lack of any set maximum, and the deferential abuse of discretion review standard, the restitution statute provides a scheme that is more like indeterminate sentencing not subject to Sixth Amendment jury determinations than the SRA's determinate sentencing scheme at issue in Blakely. Booker underscores the critical fact that the mandatory and binding nature of the SRA's provisions for imposing exceptional sentences was crucial to the holding in Blakely. Booker, 125 S.Ct. at 750, 764; see Blakely, 124 S.Ct. at 2537-38.
¶ 19 There is no right to a jury trial to determine facts on which restitution is based under RCW 9.94A.753.
¶ 20 Next, we are asked to review issues addressed by the Court of Appeals, related to the State's cross-appeal of the restitution order. Initially, Kinneman argues that the State is not entitled to appeal restitution ordered under RCW 9.94A.753 claiming an abuse of trial court discretion. He relies on State v. A.M.R., 147 Wash.2d 91, 51 P.3d 790 (2002), which involved appeal from a juvenile restitution order, for the proposition that in adult cases an appeal by the State is permitted only when "specifically allowed by statute, court rule, or case law." Id. at 95, 51 P.3d 790. Kinneman contends *356 that while RAP 2.2(b)(6) and RCW 9.94A.585(2) permit an appeal by the State when a sentence outside the standard range is imposed or an offender score has been miscalculated, under State v. Mail, 121 Wash.2d 707, 854 P.2d 1042 (1993), appeal by the State is otherwise permitted only when the sentencing court violated fundamental procedural tenets or a constitutional requirement. In Mail, we reasoned that the State may appeal where the sentencing court had a duty to follow a specific procedure under the SRA and failed to carry out that duty. Id. at 712, 854 P.2d 1042.
¶ 21 RAP 2.2(b)(6), RCW 9.94A.585(2), and Mail, do not foreclose the State's appeal of the restitution order. In Mail we explained that "[a] trial court's decision regarding the length of a sentence within the standard range is not appealable because `as a matter of law there can be no abuse of discretion.'" Mail, 121 Wash.2d at 710, 854 P.2d 1042 (quoting State v. Ammons, 105 Wash.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986)). In contrast, "it is well established that appellate review is still available for the correction of legal errors or abuses of discretion in the determination of what sentence applies." State v. Williams, 149 Wash.2d 143, 147, 65 P.3d 1214 (2003) (emphasis added). And a party may "challenge the underlying legal conclusions and determinations by which a court comes to apply a particular sentencing provision" notwithstanding the principle that generally the State may not appeal a sentence within the standard range. Id. at 146-47, 65 P.3d 1214.
¶ 22 As the Court of Appeals reasoned, the restitution part of a sentence under RCW 9.94A.753 is "separate and distinct from the standard-range portion, which is identified without exercise of discretion according to the [SRA's] matrix of crimes and offender scores," and in contrast to a standard range sentence, "[t]he amount of restitution ordered is at the discretion of the trial court." Kinneman, 122 Wash.App. at 859, 95 P.3d 1277. The Court of Appeals concluded that "[u]nlike a standard range sentence, restitution is not entitled to a presumption that there can be no abuse of discretion as a matter of law." Id. at 859, 95 P.3d 1277. We agree. The Court of Appeals did not err in allowing the State to appeal the restitution order.
¶ 23 Next, as noted, the trial court ordered Kinneman to pay restitution to Rodney Brown in the amount that Kinneman stole plus interest. The Court of Appeals held that the trial court abused its discretion because, although Brown sustained some loss, there is evidence that he had sought and received reimbursement from some of the parties that Kinneman had paid from the stolen funds. Id. at 861, 95 P.3d 1277.[11] Moreover, the Court of Appeals noted, the escrow funds that Kinneman stole were not intended to go to Rodney Brown. Id. The Court of Appeals remanded for an evidentiary hearing, saying that "[d]etermining Brown's losses requires arithmetical calculations not yet before the court.... The calculations may be somewhat complex. This does not mean that they will not be easily ascertainable." Id. at 861, 863, 95 P.3d 1277.
¶ 24 Kinneman contends, though, that the Court of Appeals' decision violates the statutory requirement that restitution
shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury. Restitution shall not include reimbursement for damages for mental anguish, pain and suffering, or other intangible losses, but may include the costs of counseling reasonably related to the offense.
RCW 9.94A.753(3). Kinneman says that Brown's loss in equity is not an easily identified, discrete sum, and determining the loss involves a complicated analysis beyond the authority of a trial court in a criminal proceeding.
¶ 25 The statute precludes restitution for speculative and intangible losses. However, while restitution must be based on "`easily ascertainable damages,'" the "amount of harm or loss `need not be established with specific accuracy.'" Hughes, 154 *357 Wash.2d at 154, ¶ 77, 110 P.3d 192 (quoting State v. Fleming, 75 Wash.App. 270, 274, 877 P.2d 243 (1994)). "Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture." Id. (quoting Fleming, 75 Wash.App. at 274-75, 877 P.2d 243). If the defendant disputes facts relevant to determining restitution, the State must prove the damages at an evidentiary hearing by a preponderance of the evidence. Id. There is no requirement that a victim's damages be foreseeable. Enstone, 137 Wash.2d at 680-81, 974 P.2d 828. The "easily ascertainable" standard does not mean that restitution can be awarded only under simple calculations, as the Court of Appeals said.
¶ 26 Kinneman argues, however, that Brown lost title to his properties because he failed to pay his mortgages and monitor his finances, and this loss was not due to Kinneman's theft. He argues that Brown had no legal right to the money that was stolen because that money was intended to give Option One first priority security interests in the properties. And, Kinneman says, Brown has obtained a large civil judgment against Kinneman covering loss of equity, attorney's fees and other damages.
¶ 27 These assertions highlight the need for an evidentiary hearing to determine Brown's losses and whether they were a direct result of Kinneman's thefts, as the Court of Appeals reasoned. As the Court of Appeals also noted, both Kinneman and the State requested an evidentiary hearing, but the trial court declined to hold one. We conclude that the Court of Appeals did not err in remanding for an evidentiary hearing to determine restitution for Brown's losses.
¶ 28 Kinneman also argues that restitution cannot be based on cumulative harm from his individual acts and that restitution was improperly imposed because, he says, he was not convicted of theft for all money allegedly misspent. Restitution is allowed only for losses that are causally connected to a crime, and may not be imposed for a "`"general scheme,"'" acts "`"connected with"'" the crime charged, or uncharged crimes unless the defendant enters into an express agreement to pay restitution in the case of uncharged crimes. State v. Woods, 90 Wash.App. 904, 907-08, 953 P.2d 834 (1998) (quoting State v. Miszak, 69 Wash.App. 426, 428, 848 P.2d 1329 (1993)). However, although the State originally charged 77 counts of theft and then moved to dismiss some of the charges, this record shows that there is no doubt that the thefts for which Kinneman was convicted made the escrow funds unavailable for the refinancings. And, because money is essentially "fungible," there is no requirement that the victims' losses must be tied causally to specific individual thefts for which Kinneman was convicted.
¶ 29 The next question is whether the trial court abused its discretion in denying restitution for attorney fees and costs sought by Rodney Brown, Old Republic, and Option One. The Court of Appeals found an abuse of discretion and remanded for an evidentiary hearing on this matter. Kinneman claims that the Court of Appeals erred, arguing that the trial court properly concluded that the attorney fees and costs for which restitution was sought "were either associated with other civil claims or impossible to parcel out from the other civil claims" and that the trial court "found the attorneys' fees sought in the case at bar were related to other litigation." Pet'r's Suppl. Br. at 22.
¶ 30 Kinneman misrepresents the trial court's ruling. The trial court did not examine whether the attorney fees and costs for which restitution was sought represented damages within the meaning of the restitution statute and whether they were causally connected to Kinneman's thefts. Instead, the trial court simply followed State v. Martinez, 78 Wash.App. 870, 899 P.2d 1302 (1995), as stating a rule that restitution could not be based on attorney fees and costs, subject to only two exceptions, i.e., under the specific factual circumstances in State v. Wilson, 100 Wash.App. 44, 995 P.2d 1260 (2000) and State v. Christensen, 100 Wash.App. 534, 997 P.2d 1010 (2000). See CP at 13 (trial court's memorandum ruling on restitution).
¶ 31 In Martinez, the defendant was convicted of arson after a fire destroyed his business. His insurance company had incurred *358 expenses in investigating the fire and attorney fees in defending a civil suit brought by the defendant to collect on the insurance policy. As to the investigation costs the court said, among other things, that they did not fall within any of the categories of losses identified in the restitution statutesproperty loss or damage, injury to persons, lost wages, and counseling. Martinez, 78 Wash.App. at 882, 899 P.2d 1302. We disagree with this reasoning.
¶ 32 We have held that funds expended by a victim as a direct result of the crime (whether or not the victim is an "immediate" victim of the offense) can be a loss of property on which restitution is based. State v. Smith, 119 Wash.2d 385, 831 P.2d 1082 (1992) (funds expended by a burglarized bank to develop film, and unload and reset surveillance camera constituted "property"); State v. Davison, 116 Wash.2d 917, 921-22, 809 P.2d 1374 (1991) (funds paid by a city to its employee who was the immediate victim of an assault while he was unable to work as a result of the assault constituted property). Within this principle, expenditure of funds for investigative costs can be loss of property. In Wilson, 100 Wash.App. at 50, 995 P.2d 1260, for example, the court concluded that restitution may be ordered for investigative costs if they are "reasonably and rationally related to the crime and consequential in the sense that but for the [crime], the victim would not have incurred them." The court upheld restitution ordered for an employer's investigative costs to prove monetary loss due to embezzlement of funds by her employee.
¶ 33 The court in Martinez also said, as to the attorney fees and costs incurred in the civil litigation, that attorney fees are not costs and thus not recoverable "as an element of damages." Martinez, 78 Wash.App. at 884, 899 P.2d 1302. In addition, the court concluded, attorney fees can be awarded only when authorized by statute, contract, or a recognized ground of equityabsent one of these bases, attorney fees cannot be awarded. Id. at 884, 899 P.2d 1302. Again, we disagree with this reasoning. The civil rule regarding whether attorney fees may be awarded as an element of damages and the "American rule" for an award of attorney fees simply have no place in the criminal restitution scheme. See Ewing, 102 Wash.App. at 353-54, 7 P.3d 835 (the court is "unable to discern why civil doctrines ... have any place in interpretation of criminal statutes"); Christensen, 100 Wash.App. at 537-38, 997 P.2d 1010 (the court "fail[s] to see how [the "American rule" of attorney fees,] designed to regulate recovery of attorney fees in civil cases[,] has any application in deciding an award of restitution in a criminal proceeding").
¶ 34 Attorney fees and costs may constitute damages on which restitution may be based, depending on the circumstances. In Christensen, for example, an attorney was convicted of stealing from his clients. The victim sued the defendant for recovery of her losses, incurring attorney fees, and then settled the suit for less than the amount of her loss. She recovered part of the remainder of her loss through the Washington State Bar Association Client Protection Fund. The trial court ordered restitution in an amount that would make the victim whole, including the amount of attorney fees that had been deducted from her settlement. The Court of Appeals affirmed, reasoning that because the victim had to pay attorney fees to get any recovery in the civil suit, incurring the fees was a direct result of the defendant's offense. However, restitution is improper if the fees are not sufficiently causally connected to the offense. See, e.g., State v. Vinyard, 50 Wash.App. 888, 894, 751 P.2d 339 (1988) (the defendant was convicted of custodial interference; attorney fees connected with the victim's representation in a separate domestic action regarding the defendant's visitation rights were not sufficiently causally related to the crime of custodial interference and thus restitution for the attorney fees was improperly imposed).
¶ 35 Here, the trial court simply concluded that the attorney fees and costs were not incurred in an attempt to investigate and assess the amount of the loss as in Wilson, nor were they sought to make the victim whole when a civil settlement received by the victim failed to do so because attorney fees and costs were deducted from the settlement, as in Christensen. The court erred by applying *359 Martinez to preclude restitution for attorney fees and costs unless the particular factual circumstances are identical to those in Wilson or Christensen. Because the trial court applied an incorrect legal analysis, it abused its discretion. See City of Kennewick v. Day, 142 Wash.2d 1, 8, 11 P.3d 304 (2000) (a decision based on an erroneous view of the law constitutes an abuse of discretion). The Court of Appeals correctly directed that this case be remanded for an evidentiary hearing on the requests for restitution for attorney fees and costs.
¶ 36 Finally, although there has been no complaint about the trial court's instruction that Rodney Brown be paid in full before other restitution is paid, we draw the parties attention to RCW 9.94A.753(9),[12] which provides that
[t]he state or victim may enforce the court-ordered restitution in the same manner as a judgment in a civil action. Restitution collected through civil enforcement must be paid through the registry of the court and must be distributed proportionately according to each victim's loss when there is more than one victim.

CONCLUSION
¶ 37 The State was entitled to appeal the restitution order, asserting that the trial court abused its discretion. Further, we hold that Apprendi and Blakely do not apply to restitution under RCW 9.94A.753. Finally, the Court of Appeals properly remanded this case for an evidentiary hearing on Rodney Brown's losses and to determine whether restitution should be imposed for attorney fees and costs incurred by Brown, Option One and Old Republic allegedly as a direct result of Kinneman's thefts.
¶ 38 The Court of Appeals' decision is affirmed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, SANDERS, BRIDGE, CHAMBERS, OWENS, FAIRHURST and J.M. JOHNSON, JJ.
NOTES
[1] Former RCW 9.94A.142 is now codified at RCW 9.94A.753. The relevant substantive provisions have not changed. RCW 9.94A.753 will be cited except for references to the former statute when citing prior case law.
[2] He did not disclose that he was W.M. Brown rather than Rodney Brown, and he signed his brother's name to the documents. There is no claim at this point, however, that W.M. Brown did not act with authority when he obtained the loans
[3] The Court of Appeals upheld Kinneman's convictions. State v. Kinneman, 120 Wash.App. 327, 84 P.3d 882 (2003), review denied, 152 Wash.2d 1022, 101 P.3d 108 (2004).
[4] The State moved, and Kinneman joined the motion, to continue the restitution hearing beyond the 180-day statutory period after Kinneman's counsel moved to withdraw and substitute counsel had not been appointed as of a few days before the hearing was originally scheduled.
[5] The State says that the amount stolen was $208,713.10, the same as the amount of the tendered check, and that the court's figure of $206,770.10 is in error.
[6] Brown had asked for the amount stolen, plus attorney fees and costs totaling $100,000.00 and interest of $108,756.01.
[7] Old Republic had asked for a total of $423,649.90. This included $173,233.55 to pay off the note and deed of trust on the 25th Avenue property and $90,383.18 to pay off the Brandon Street property. It also included $42,663.76 in attorney fees to defend the validity and enforceability of Option One's deed of trust in a suit brought by Rodney Brown in federal bankruptcy court. In addition, Old Republic sought $17,805.23 in attorney fees and costs it had expended in pursuing a civil action against Kinneman for damages caused by his thefts. Old Republic also sought interest.
[8] The legislature responded to Blakely by amending the SRA to provide for jury determinations of aggravating factors justifying exceptional sentences upward. LAWS OF 2005, ch. 68 (amending RCW 9.94A.530 and RCW 9.94A.535, and adding RCW 9.94A.537 (effective April 15, 2005)).
[9] See also State v. Smith, 119 Wash.2d 385, 389, 831 P.2d 1082 (1992) (restitution promotes ""`respect for the law by providing punishment which is just'"") (quoting State v. Davison, 116 Wash.2d 917, 922, 809 P.2d 1374 (1991)); Davison, 116 Wash.2d at 920, 809 P.2d 1374 (restitution has a "`strong punitive flavor'") (quoting DAVID BOERNER, SENTENCING IN WASHINGTON § 4.8, at 4-14 (1985)); State v. Dennis, 101 Wash.App. 223, 229, 6 P.3d 1173 (2000) (restitution has a compensatory purpose but is primarily punitive); State v. Edelman, 97 Wash.App. 161, 166, 984 P.2d 421 (1999) (restitution is part of an offender's sentence and is primarily punitive); State v. Young, 63 Wash.App. 324, 329, 818 P.2d 1375 (1991) (restitution is both compensatory and punitive); State v. Eyre, 39 Wash.App. 141, 144-45, 692 P.2d 853 (1984) (same). Because restitution is punishment, the Court of Appeals has held that the obligation to pay restitution does not abate with the death of the victim. Edelman, 97 Wash.App. 161, 984 P.2d 421.
[10] The State also says that Kinneman's reliance on Davison is misplaced. As the State says, the court there declined to construe the restitution statute strictly in the defendant's favor, Davison, 116 Wash.2d at 919-20, 809 P.2d 1374, and the State reasons this undercuts the view that restitution is punitive. However, the court did not conclude that the restitution statute is not punitive. Instead, the court construed the statute to effectuate legislative intent. Id. at 920-21, 809 P.2d 1374. The court said:

Our interpretation of the statutes requires the defendant to face the consequences of his criminal conduct. We interpret the statute to carry out its purpose to "[p]romote respect for the law by providing punishment which is just". RCW 9.94A.010(2). We will not give the statutes an overly technical construction which would permit the defendant to escape from just punishment.
Id. at 922, 809 P.2d 1374.
[11] Restitution does not preclude civil remedies. RCW 9.94A.753(9).
[12] The same language appeared in former RCW 9.94A.142.