
# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>        v.<br><br>BRIAN ADRIAN SAWYER,<br><br>                    Appellant. | No. 69454-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: March 10, 2014 |

LEACH, C.J. — Brian Sawyer appeals the trial court's restitution order entered following his conviction for trafficking in stolen property in the first degree. He claims that the amount imposed exceeds the loss the State proved to be causally connected to his offense. Because the State established the ordered restitution amount by a preponderance of the evidence, we affirm.

## Background

Commercial Metal Recycling Inc. operates a public metal recycling center in Pacific, Washington. Brenna Otto worked as a bookkeeper and a manager at Commercial Metal. Michael Holman was a scale operator at Commercial Metal.

Sawyer sold scrap metal to Commercial Metal often. Otto and Holman became suspicious of Sawyer because he frequently sold to Commercial Metal about two to four hundred pounds of high-grade copper at one time. Sawyer

delivered this copper in the form of large, heavy ingots contained in gray five-gallon buckets.

In June 2011, Otto created an electronic spreadsheet documenting Sawyer's copper sales to Commercial Metal between March 4, 2010, and May 17, 2011. During this time, Sawyer sold a total of 7,395 pounds of "copper: #1" to Commercial Metal in 36 separate transactions, for which Commercial Metal paid him a total of $25,677.95.

In May 2011, Pacific Police Department Detective David Newton conducted a routine business check at Commercial Metal.[1] During this check, Otto shared with Newton her suspicions about Sawyer.

On May 17, 2011, Newton spoke with Sawyer at Commercial Metal. Sawyer told Newton that he obtained the copper from a man in West Seattle whose name and phone number he did not know. In June 2011, Sawyer told his neighbor that he was scrapping copper he obtained from Rainier Ballistics, a company that produces bullets.

Newton contacted Rainier Ballistics' production manager, John O'Connell. He confirmed that the ingots Sawyer brought to Commercial Metal for recycling were identical to the type that Rainier Ballistics used. O'Connell knew of no other manufacturer in Washington who used copper in this ingot form. Rainier

---

[1] Newton conducted business checks "[a]bout once every week or two weeks" "to make sure that everything is okay with the property, they haven't had any thefts, no vandalism, are there suspicious people coming in, recycling suspicious materials."

Ballistics stored the copper in gray five-gallon buckets, with 220 pounds in each bucket. O'Connell was not familiar with Sawyer or with Commercial Metal. Newton suggested to O'Connell that Rainier Ballistics take an accurate physical inventory of its copper. Plating manager Rick Lengston conducted this inventory on July 6, 2011, which showed approximately 1,800 pounds of oxygen-free copper missing and approximately 5,780 pounds of regular copper missing since the previous inventory on June 1.[2] The amount of copper missing was more than the company would normally use during this period of time.

David Gordon worked the overnight shift on the plating line at Rainier Ballistics. He generally worked in the facility alone or with one other employee. Rainier Ballistics stored the copper close to the plating line. Before Rainier Ballistics conducted the physical inventory, Lengston noticed that Gordon's usage logs showed him using about one to two hundred pounds more copper than the production process could accommodate, despite no evidence of copper waste or scraps. Shortly after Rainier Ballistics conducted the physical inventory, Gordon called in sick and never returned to work.

On July 13, 2011, O'Connell called the police to report the copper theft from Rainier Ballistics. O'Connell told police that Gordon would arrive at Rainier Ballistics the following day to pick up his paycheck. On July 14, police officers

---

[2] Lengston indicated that he noticed approximately eight buckets of oxygen-free copper missing. The prior plating manager did not previously conduct a correct inventory.

arrested Gordon near Rainier Ballistics. Afterward, Rainier Ballistics' copper loss rates decreased.

After reviewing Otto's spreadsheet of the copper that Commercial Metal purchased from Sawyer, O'Connell determined that in nearly all instances, Gordon worked the night shift at Rainier Ballistics the day before Sawyer brought copper to Commercial Metal. Sawyer brought no copper to Commercial Metal the days after Gordon worked the day shift.

The State charged Sawyer with trafficking in stolen property in the first degree for selling copper between March 1, 2010, and May 31, 2011, taken from Rainier Ballistics. A jury convicted Sawyer as charged and returned a special verdict that the crime was a major economic offense or series of offenses. The court imposed a standard range sentence.

Following a hearing, the trial court ordered Sawyer to pay $31,872.45 in restitution.[3] The court based this amount upon the 7,395 pounds of copper that Sawyer sold to Commercial Metal and the average price per pound— $4.31— that Rainier Ballistics paid for copper during the relevant period.

Sawyer appeals.

Analysis

Sawyer asks us to vacate the trial court's restitution order, claiming, "Not only did the State fail to establish the amount of copper missing from Rainier

---

[3] The court determined that Rainier Ballistics was entitled to $1,872.45 in restitution and Western National Insurance, Rainier Ballistics' insurer, was entitled to $30,000.00 in restitution.

-4-

Ballistics, it also failed to establish how much of the copper Sawyer sold to Commercial Metals [sic] came from Rainier Ballistics." We review a trial court's restitution order for abuse of discretion.[4] A court abuses its discretion if its decision is based on untenable grounds or reasons or is contrary to law.[5]

RCW 9.94A.753(5) requires the court to order restitution "whenever the offender is convicted of an offense which results in injury to any person or damage to or loss of property." RCW 9.94A.753(3) provides that restitution "shall be based on easily ascertainable damages for injury to or loss of property, actual expenses incurred for treatment for injury to persons, and lost wages resulting from injury." It also states, "The amount of restitution shall not exceed double the amount of the offender's gain or the victim's loss from the commission of the crime."[6] The legislature intended to grant the trial court "'broad powers of restitution.'"[7]

In Washington, "[r]estitution is at least as punitive as compensatory."[8] In State v. Kinneman,[9] our Supreme Court declared that the restitution statute "does not say that the restitution ordered must be equivalent to the injury, damage or loss, either as a minimum or a maximum, nor does it contain a set

---

[4] State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).
[5] State v. Sanchez, 171 Wn. App. 518, 546, 288 P.3d 351 (2012) (citing State v. Schmitt, 124 Wn. App. 662, 666, 102 P.3d 856 (2004); Tobin, 161 Wn.2d at 523), review denied, No. 88603-2 (Wash. Aug. 5, 2013).
[6] RCW 9.94A.753(3).
[7] Tobin, 161 Wn.2d at 524 (quoting State v. Davison, 116 Wn.2d 917, 920, 809 P.2d 1374 (1991)).
[8] State v. Kinneman, 155 Wn.2d 272, 281, 119 P.3d 350 (2005).
[9] 155 Wn.2d 272, 282, 119 P.3d 350 (2005).

maximum that applies to restitution. Instead, RCW 9.94A.753 allows the judge considerable discretion in determining restitution."

If the defendant disputes the appropriate amount of restitution, the State must prove the amount by a preponderance of the evidence.[10] A court may not impose restitution for speculative or intangible losses.[11] While a court must base restitution on easily ascertainable damages, "'the amount of harm or loss need not be established with specific accuracy.'"[12] "Evidence is sufficient to support a restitution order if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture."[13] A court may impose restitution only for losses "that are 'causally connected' to the crimes charged."[14] A victim's damages need not be foreseeable.[15]

At the restitution hearing, Sawyer claimed that the appropriate amount of restitution was $7,585.60. He based this calculation upon eight 220-pound buckets of oxygen-free copper at a price of $4.31 per pound. Sawyer argued, "There was a nine-bucket pallet when they went to actually do inventory, which it

---

[10] Tobin, 161 Wn.2d at 524 (citing State v. Hughes, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), overruled on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)).

[11] State v. Lohr, 130 Wn. App. 904, 910, 125 P.3d 977 (2005) (citing Kinneman, 155 Wn.2d at 285).

[12] Lohr, 130 Wn. App. at 910 (internal quotation marks omitted) (quoting Kinneman, 155 Wn.2d at 285).

[13] Lohr, 130 Wn. App. at 910 (citing Kinneman, 155 Wn.2d at 285).

[14] Tobin, 161 Wn.2d at 524 (quoting Kinneman, 155 Wn.2d at 286).

[15] Tobin, 161 Wn.2d at 524 (citing State v. Enstone, 137 Wn.2d 675, 682-83, 974 P.2d 828 (1999)).

doesn't sound like they did a very good job of leading up to this, it was the eight buckets that they found missing."[16]

The State proved by a preponderance of the evidence that 7,395 pounds was a reasonable estimate of the amount of copper Sawyer stole from Rainier Ballistics and sold to Commercial Metal. At the restitution hearing, the State presented a victim impact statement from McConnell noting, "Although the attached 'Purchases by Vendor Deta[i]l' List only shows 7,395 LBS of copper was taken, there is still approximately 2,700 more Lbs that came up missing and had to have been cashed in at another location, during the 1 1/2 years that this had been going on." Rainier Ballistics received $30,000 from its insurance company for the missing copper, the maximum available under its policy.

At trial, the State presented a spreadsheet indicating that Sawyer sold 7,395 pounds of copper to Commercial Metal over the course of 36 separate transactions during the relevant time period. Of these 36 sales, 19 were approximately 200 or 400 pounds, reflecting a sale of one or two of the 220-pound buckets of copper that Rainier Ballistics stored. Sawyer brought the copper to Commercial Metal in gray five-gallon buckets similar to those that Rainier Ballistics used to store its copper. These buckets contained the distinctive copper ingots that Rainier Ballistics sold. Sawyer sold 7,022 pounds

---

[16] Sawyer's calculation does not include the regular copper missing from Rainier Ballistics. Lengston testified at trial that the amount of this type of copper he found during the inventory "would match fairly consistently" with normal usage logs, but that "[i]t's more than could have been used."

of copper during these 19 transactions alone. Although the record does not indicate if the smaller quantities that Sawyer sold in the other 17 transactions contained the distinctive ingots from Rainier Ballistics, the trial court could reasonably conclude that copper came from Rainier Ballistics as well, because the physical inventory and usage logs suggested that during the relevant time period, the company used more copper than it generally used during production.

The State need not establish with specific accuracy the amount that Rainier Ballistics lost as a result of Sawyer's offense. The trial court did not abuse its discretion when it required Sawyer to pay $31,872.45 in restitution.

Conclusion

The State presented evidence that provided the trial court with a reasonable basis for calculating Rainier Ballistics' loss at $31,872.45, without engaging in speculation or conjecture. Therefore, we affirm the restitution order in this amount.

_Leach, C.J._

WE CONCUR:

_Spearman, J._          _Trickey, J._