IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| STATE OF WASHINGTON, | ) | No. 74414-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JAMES ALLEN BEA, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | FILED: November 14, 2016 |
| | ) | |

BECKER, J. — Appellant James Bea and the State agree the restitution order in this case is inconsistent with the parties' plea agreement. They ask this court to remand for an evidentiary hearing on disputed facts. We reverse and remand for rehearing.

Bea worked for Jack Henry & Associates Inc. (Jack Henry), a company that processes financial information for credit card companies. Employees of the company began receiving text messages from an anonymous sender who threatened to bomb Jack Henry branches. Around the same time, Maine State Credit Union (Maine State) notified Jack Henry of potential fraudulent activity on four credit card accounts. Police traced both the bomb threats and fraudulent activity to Bea. Bea pled guilty. The court ordered him to pay restitution to Jack Henry in the amount of $27,613.34. Bea appeals from this order.

A trial court's authority to impose restitution is derived entirely from statute. State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007). If a court acts within its authority when ordering restitution, we will not reverse absent an abuse of discretion. State v. Gray, 174 Wn.2d 920, 924, 280 P.3d 1110 (2012).

Our statutory scheme authorizes a court to impose restitution for losses resulting from charged crimes. Restitution for loss beyond the scope of the crime charged is properly awardable only when the defendant enters into an express agreement to make such restitution as part of the plea bargain process. RCW 9.94A.753(5); State v. Woods, 90 Wn. App. 904, 908, 953 P.2d 834, review denied, 136 Wn.2d 1021 (1998). A court may not impose restitution based on a defendant's general scheme or acts connected with the crime charged when those acts are not part of the charge and are beyond the scope of the plea agreement. State v. Dauenhauer, 103 Wn. App. 373, 378, 12 P.3d 661 (2000), review denied, 143 Wn.2d 1011 (2001); Woods, 90 Wn. App. at 907-08.

Bea was charged with and pled guilty to seven counts: two counts of threats to bomb or injure the property of Jack Henry, two counts of identity theft in the first degree, one count of identity theft in the second degree, and two counts of felony harassment.

In the plea deal, Bea agreed to pay restitution "to Jack Henry and Associates for all costs related to charged conduct including security measures and reimbursement for fraud losses to credit customers; for actual losses by Main [sic] State Credit Union credit card customers [four names are listed]."

2

The State presented a documented 44-page request for restitution of $40,924.31 to Jack Henry. The cover sheet stated that this amount included restitution "for an occupational risk manager to address trauma caused by the defendant's threats ($2,971.21), auditing costs ($9,714.15), credit monitoring for affected cardholders ($6,637.42), and reimbursement of financial institution that sustained a loss ($21,601.53)." The documents represented that Jack Henry's losses included reimbursement of 13 financial institutions for "Fraud Losses."

A brief hearing on restitution was held on December 4, 2015. Bea objected that the documents submitted by the State did not connect the expenses to his conduct in the charged crimes—particularly with respect to the financial institutions. The State responded that the amount claimed in restitution was authorized by the plea agreement.

The trial court examined the documents and determined that the claimed amounts for the risk manager, the auditing costs, and the credit monitoring were directly related to the plea agreement. The court decided that the amount claimed for "reimbursement of financial institution that sustained a loss" should be reduced. The court stated, "The financial institution—I am going to limit it to the Maine State Community Bank and the Maine State Credit Union sums" and "of financial institution I have limited to the one that [Bea] agreed to pay."[1]

---

[1] Some confusion arises from the similarity between Mainstreet's and Maine State's names and the court's statement of its intention to impose restitution for "one" financial institution, the one that Bea "agreed to pay." As reflected by the transcript of oral argument below, Bea agreed that Maine State was entitled to be reimbursed but not in the amount claimed.

3

Instead of the total amount requested by the State for 13 different financial institutions, the court included only two items for financial institutions: the amount of $7,717 claimed for Maine State Credit Union and the amount of $573.56 claimed for Mainstreet Community Bank. The court ordered restitution totaling $27,613.34.

Bea claims the restitution award exceeds the court's authority insofar as it covers losses sustained by Maine State and Mainstreet. Maine State's claim for $7,717 was for issuing 82 new credit cards, pins, alerts, and similar items. Mainstreet's claim was for an expense titled "Goodwill credit in regard to card #[----] involved in the Security Risk Issue," with details of what appear to be 9 separate credit card charges. It is not clear from the record, and the State's brief does not explain, how the amounts awarded for Maine State and Mainstreet are causally connected either to Bea's offenses or to the language in the plea agreement. Bea asks that the matter be remanded for an evidentiary hearing to determine this question. See State v. Kinneman, 155 Wn.2d 272, 285-86, 119 P.3d 350 (2005).

The State contends the court abused its discretion by limiting the restitution to only 2 of the 13 financial institutions that Jack Henry had to reimburse for fraud losses. It is not clear from the record why all 13 claims are not covered by Bea's agreement to reimburse Jack Henry "for fraud losses to credit customers." The State agrees that the case should be remanded to the trial court for an evidentiary hearing to determine the proper amount of restitution consistent with the plea agreement.

4

We conclude it is appropriate to reverse the order of restitution and remand for an evidentiary hearing where the parties will be permitted to explore the factual basis for the items in dispute as well as the meaning of the language used in the plea agreement.

The order of restitution is reversed. The matter is remanded for an evidentiary hearing.

Becker, J.

WE CONCUR:

Spearman, J.

Cepplewick, J.