IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38683-0-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JASON JESSY FONTAINE-GONZALES, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. —Jason Jessy Fontaine-Gonzales appeals his convictions for residential burglary and second degree malicious mischief. He also challenges the constitutionality of two legal financial obligations imposed at sentencing. We affirm.

## FACTS

Daniel Swain left his home in rural Spokane County, Washington, at around 3:00 p.m. on October 2, 2022. At approximately 4:15 p.m., while he was away, he received a call from his alarm company, indicating a house alarm alert. A few minutes later, Mr. Swain received a voice mail from a man named Josh Terpstra, who had previously built a shop on Mr. Swain's property. The voicemail stated, in relevant part:

> Yeah, hey it's Josh Terpstra. Built your shop, you know. Hope you're doing good. I just wanted to touch base with you because—touch base, call you because I found a—I drove by your house with a buddy of mine. I was out in the area and I wanted—just wanted to show him the shop and I actually caught a guy, a couple guys snooping around on your place. So, I confronted them and got them out of there and whatnot and called their bullshit and I got their license plate number too just in case something comes up missing or you have an issue. But Washington plate B, Bravo,

Charlie, Foxtrot, 5218. So, there you go. Give me a call if you have any questions. Yep. Hope you're doing good. Talk to you later. Bye.

Ex. P-1.

Mr. Swain returned home within the next 10 to 15 minutes. Mr. Swain discovered that at the back of his house a slider door was partially open. The slider led to an enclosed, screened-in porch. Inside the porch were French doors that led to the main part of the residence. Mr. Swain discovered the French doors had been pried open, with cracks around the door's deadlock. Mr. Swain did not discover anything missing from his home. The only property damage was to the French doors.

Mr. Swain reviewed videos from his home security system. A video showed that just before 4:00 p.m., a car pulled up to Mr. Swain's shop and then shortly after parked in front of his home. A man, later identified as Jason Fontaine-Gonzales, can be seen getting out of the passenger side of the car. The man walked up to Mr. Swain's front porch, looked through a window, and then adjusted the video camera upward so it could not capture images of the front porch. A few minutes later, the man returned into the frame of the garage camera, got in the front passenger seat of the car, and the car was driven off the property.

Mr. Swain contacted police and the State eventually charged Mr. Fontaine-Gonzales with residential burglary and second degree malicious mischief.

2

Before trial, the State filed a motion in limine seeking admission of Josh Terpstra's

voicemail message. According to the State, the recorded voicemail qualified as either a

present sense impression or an excited utterance. The trial court admitted the recording

under the present sense impression exception to hearsay, explaining that the exception

does not require a statement be made contemporaneously to the declarant's observations.

In addition, the court found the "the chance of misrepresentation . . . minimal to none."

Rep. of Proc. (Nov. 16, 2021) at 16.

At trial, the State presented testimony from law enforcement and Daniel Swain.

Josh Terpstra did not testify. The State's evidence was consistent with the above

summary. Mr. Swain also explained that he had spent roughly $4,600 to repair his French

doors.

At sentencing, the court imposed a $500 crime victim penalty assessment, and

assessed $4,636.89 in restitution to Mr. Swain. Mr. Fontaine-Gonzales did not object

or otherwise challenge the constitutionality of restitution or the victim assessment fee.

Mr. Fontaine-Gonzales appeals his judgment and sentence.

ANALYSIS

Mr. Fontaine-Gonzales makes three claims on appeal: (1) the evidence was

insufficient to support his convictions, (2) the trial court erroneously admitted

Mr. Terpstra's voicemail, and (3) imposition of the victim assessment and restitution violated Mr. Fontaine-Gonzales's constitutional right to be free from excessive fines.

*Sufficiency of the evidence*

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In a sufficiency challenge, the defendant admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *Id.* at 106. Under this analysis, circumstantial evidence is deemed as reliable as direct evidence. *State v. Delmarter,* 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Construed in the light most favorable to the State, the trial evidence showed Mr. Fontaine-Gonzales went to Mr. Swain's property and peered inside the main residence. He then manipulated a security camera so that it pointed upward. A reasonable inference from Mr. Fontaine-Gonzales's actions is that he attempted to conceal his activities because he intended to commit a crime. Shortly after Mr. Fontaine-Gonzales manipulated the security camera, the house alarm was triggered. A reasonable inference is that the cause of the alarm was the entry into the screened-in porch, where the French doors had been damaged. Although other people may have been at the residence at the

time the alarm was activated, a fair inference is that Mr. Fontaine-Gonzales was the cause

of the alarm, given his apparent intent was to commit a crime at the residence.

From the foregoing facts, a fair-minded juror could conclude Mr. Fontaine-

Gonzales had entered the screened-in porch with intent to commit a crime and that

Mr. Fontaine-Gonzales was the individual responsible for damaging the French doors.

These findings would be sufficient to justify convictions for residential burglary and

second degree malicious mischief. *See* RCW 9A.52.025 (A person commits residential

burglary "if, with intent to commit a crime against a person or property therein, the person

enters or remains unlawfully in a dwelling."); RCW 9A.48.080(1)(a) (The elements of

second degree malicious mischief are that the defendant (1) knowingly and maliciously

(2) caused damage (3) to the property of another and (4) the damage exceeded $750.).

*Hearsay*

Mr. Fontaine-Gonzales argues that the trial court improperly admitted Josh

Terpstra's voicemail message as a present sense impression because it was not

sufficiently contemporaneous with Mr. Terpstra's observations to qualify for the

exception to hearsay. We review a trial court's ruling on the applicability of a hearsay

exception for abuse of discretion. *State v. Rodriquez*, 187 Wn. App. 922, 939, 352 P.3d

200 (2015). Even if the court abuses its discretion, we will not reverse a conviction based

on evidentiary error unless the defendant shows prejudice. *State v. Thomas,* 150 Wn.2d 821, 871, 83 P.3d 970, *abrogated on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

The record here does not show Mr. Terpstra's voicemail message was particularly prejudicial. The voicemail never identified Mr. Fontaine-Gonzales as the individual snooping around Mr. Swain's home. Although Mr. Terpstra mentioned a license plate number, there was no evidence offered linking the plate number to any particular vehicle. All Mr. Terpstra's voicemail did was corroborate the claim that *someone* had been at Daniel Swain's home under suspicious circumstances. Given the other evidence in the case, the information relayed by the voicemail was of minimal value.

If anything, Mr. Terpstra's voicemail helped the defense because it showed someone besides Mr. Fontaine-Gonzales had been at the residence. As suggested by defense counsel during summation, it is possible Mr. Terpstra was the one involved in the break-in and that he left Mr. Swain a voicemail to deflect suspicion in case he was caught on camera. Because Mr. Terpstra was never called as a witness, he was never confronted with the possibility of nefarious motives for his voicemail.

Regardless of whether the trial court erred by admitting Mr. Terpstra's voicemail, this evidence did not prejudice the outcome of trial.

*Excessive fines*

Mr. Fontaine-Gonzales claims the court's imposition of both restitution and the

crime victim penalty assessment violate the excessive fines clause because Mr. Fontaine-

Gonzales is unable to pay, and therefore, they are grossly disproportionate. We disagree.

Both the state and federal constitutions prohibit imposition of excessive fines.

WASH. CONST. art. I, § 14; U.S. CONST. amend. VIII. To trigger an excessive fine

protection, "a sanction must be a 'fine' and it must be 'excessive.'" *City of Seattle v.

Long*, 198 Wn.2d 136, 162, 493 P.3d 94 (2021). Our review of an excessive fine claim

is de novo. *Id*. at 163.

This court has previously held the crime victim penalty assessment does not

implicate an excessive fines analysis. *State v. Ramos*, 24 Wn. App. 2d 204, 228, 520 P.3d

65 (2022*), review denied*, No. 101512-7 (Wash. Mar. 8, 2023); *State v. Tatum*, 23 Wn.

App. 2d 123, 130, 514 P.3d 763, *review denied*, 200 Wn.2d 1021, 520 P.3d 977 (2022).

We adhere to those rulings here.

Our case law has treated restitution differently from the crime victim penalty

assessment based on our Supreme Court's holding that restitution is at least partially

punitive. *See Ramos*, 24 Wn. App. 2d at 226; *State v. Kinneman*, 155 Wn.2d 272, 279-80,

119 P.3d 350 (2005). However, our courts have held "that when restitution is based on the

victim's actual losses, it is inherently proportional to the crime, even if the defendant lacks the ability to pay." *Ramos*, 24 Wn. App. 2d at 230.

Mr. Fontaine-Gonzales's restitution award was based solely on Mr. Swain's out-of-pocket losses. To the extent Mr. Fontaine-Gonzales disbelieved Mr. Swain's loss amount, his remedy was to challenge the amount at a restitution hearing. Mr. Fontaine-Gonzales cannot avoid paying for Mr. Swain's losses simply because Mr. Swain's property was expensive or because Mr. Fontaine-Gonzales lacks financial resources.

## CONCLUSION

The judgment and sentence is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Pennell, J.

WE CONCUR:

Siddoway, C.J.

Staab, J.

8